## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No.: 1:25-cv-00481-UA-JEP

PHILIP SCHWAB,
individually and on behalf of those
similarly situated,

        Plaintiff,

    v.

RESEARCH TRIANGLE INSTITUTE
d/b/a RTI INTERNATIONAL,

        Defendant.

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS OR STRIKE CLASS ACTION
## ALLEGATIONS

# Table of Contents

Table of Authorities ............................................................................ ii

Nature of the Matter Before the Court ............................................... 1

Plaintiff's Allegations ........................................................................ 2

Questions Presented ........................................................................... 3

Argument ............................................................................................ 4

      I.     The Court should dismiss Schwab's complaint with
            prejudice because it does not and cannot allege a mass
            layoff or plant closing at a single site of employment ................... 4

             A.    Schwab fails to state a WARN Act claim because he
                    alleges no facts showing a plant closing or mass layoff
                    at a single site of employment ............................................... 5

             B.    If the complaint is construed as alleging that Schwab
                    is a remote worker, then he is outside the coverage of
                    the WARN Act ..................................................................... 11

      II.    At a minimum, the Court should strike the class
            allegations in Schwab's complaint ............................................. 17

Conclusion ......................................................................................... 21

Certificate of Compliance ................................................................. 23

i

# Table of Authorities

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................... 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................ 4, 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................4

*Coleman v. Optum, Inc.,*
    No. 1:22-cv-5664, 2023 WL 6390665 (S.D.N.Y. Oct. 1, 2023).................... 15

*Easom v. US Well Servs., Inc.,*
    37 F.4th 238 (5th Cir. 2022) .........................................................5

*Easom v. US Well Servs., Inc.,*
    No. 20-2995, 2023 WL 6279359 (S.D. Tex. Sept. 26, 2023) ........................ 20

*Francis v. Giacomelli,*
    588 F.3d 186 (4th Cir. 2009).........................................................4

*Frymire v. Ampex Corp.,*
    61 F.3d 757 (10th Cir. 1995).........................................................6

*Harbert v. Healthcare Servs. Grp., Inc.,*
    391 F.3d 1140 (10th Cir. 2004)..................................................... 14

*Hogans v. Charter Commc'ns, Inc.,*
    563 F. Supp. 3d 464 (E.D.N.C. 2021) ............................................... 17

*Karroll v. Car Toys, Inc.,*
    765 F. Supp. 3d 506 (D.S.C. 2025) ............................................*passim*

*Lester v. Pay Car Mining, Inc.,*
    No. 5:17-cv-740, 2018 WL 2728033 (S.D. W. Va. June 6, 2018)................. 18

Case 1:25-cv-00481-UA-JEP    Document 9    Filed 08/04/25    Page 3 of 28

*Likes v. DHL Exp.*,
288 F.R.D. 524 (N.D. Ala. 2012) ............................................................. 18, 19

*Long v. Dunlop Sports Grp. Americas, Inc.*,
506 F.3d 299 (4th Cir. 2007) .................................................................... 5

*Meson v. GATX Tech. Servs. Corp.*,
507 F.3d 803 (4th Cir. 2007) ........................................................... *passim*

*Parks v. Zayo Bandwidth, LLC*,
No. 13-4425, 2016 WL 538328 (E.D. Pa. Feb. 10, 2016) ................................ 7

*Pelino v. Ward Mfg., LLC*,
No. CIV.A. RDB-14-02771, 2015 WL 4528141 (D. Md. July 27,
2015) ................................................................................................. 17

*Piron v. Gen. Dynamics Information Tech., Inc.*,
No. 3:19-cv-709, 2020 WL 1159383 (E.D. Va. Mar. 10, 2020) ............ *passim*

*Ray v. Mechel Bluestone, Inc.*,
No. 5:15-cv-3014, 2016 WL 865322 (S.D. W. Va. Mar. 2, 2016) ................ 19

*Stafford v. Bojangles' Restaurants, Inc.*,
123 F.4th 671 (4th Cir. 2024) .................................................................... 19

*In re Storehouse, Inc.*,
No. 06-11144, 2010 WL 4453849 (Bankr. E.D. Va. Nov. 3,
2010) ....................................................................................... 11, 14, 15

*Teamsters Local Union 413 v. Driver's, Inc.*,
101 F.3d 1107 (6th Cir. 1996) .................................................................... 16

*In re TWL Corp.*,
712 F.3d 886 (5th Cir. 2013) ..................................................................... 5

*Wiltz v. M/G Transport Servs., Inc.*,
128 F.3d 957 (6th Cir. 1997) ..................................................................... 12

**Statutes**

29 U.S.C. § 2101(a)(2)–(3) ................................................................. 5, 6, 10, 19

29 U.S.C. § 2102(a) .................................................................................... 5

29 U.S.C. § 2102(d) ................................................................................ 20

29 U.S.C. § 2104(a) ................................................................................ 4

**Other Authorities**

20 C.F.R. § 639.3(i) .............................................................. 3, 6, 9, 12, 13

20 C.F.R. § 639.5(a)(1)(ii) .................................................................... 20

54 Fed. Reg. 16042, 16049 (Apr. 20, 1989) ......................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 3, 21

Fed. R. Civ. P. 12(f) .......................................................... 2, 4, 17, 21

Fed. R. Civ.  P. 23 ............................................................. 2, 4, 17, 21

## Nature of the Matter Before the Court

In his complaint, Plaintiff Philip Schwab asserts a single cause of action for violation of the WARN Act against Defendant Research Triangle Institute ("RTI") stemming from RTI's termination of his employment on June 3, 2025. The complaint, however, is conclusory and fails to allege an essential element of a WARN Act claim: that Schwab was part of a mass layoff or plant closing that occurred at his ***single site of employment***. The complaint alleges no single site of employment at all, which is a fatal defect.

At most, the complaint suggests that Schwab worked remotely from Kentucky, where he resides. Under Fourth Circuit law, however, a remote employee's single site of employment is the remote physical location where that employee worked (e.g., the employee's home). Schwab's single site of employment was thus his remote work location in Kentucky. Schwab does not and cannot allege that any other employee worked at this location. Accordingly, there was not and could not have been any mass layoff or plant closing at Schwab's single site of employment and he fails to state a WARN Act claim. *See Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803 (4th Cir. 2007); *Piron v. Gen. Dynamics Information Tech., Inc.*, No. 3:19-cv-709, 2020 WL 1159383 (E.D. Va. Mar. 10, 2020).

For these reasons, the Court should dismiss the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). At a minimum, the

1

Court should strike the complaint's class allegations under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D) because, as a matter of law, they fail to show that Schwab could maintain a class action here.

## Plaintiff's Allegations

RTI is an international non-profit corporation headquartered at 3040 East Cornwallis Road in Durham, North Carolina. (ECF 1 (Compl.) ¶¶ 2, 11.) Plaintiff Philip Schwab resides in Kentucky. (*Id*. ¶ 10.) He worked for RTI in its Health Solutions Group for approximately three years. (*Id*. ¶¶ 10, 14.) On May 20, 2025, RTI informed Schwab that, because of "departmental restructuring and budgetary constraints," his position and others in the Health Solutions Group were being terminated. (*Id*. ¶¶ 14-15.) RTI terminated Schwab's employment on June 3, 2025. (*Id*. ¶ 16.) Schwab alleges that he was one of "at least 200 employees" who were terminated by RTI. (*Id*. ¶ 3.)

Schwab does not identify his physical work location, but the complaint indicates that he worked remotely from Kentucky. (*See id*. ¶ 10.) Schwab does not allege that RTI has any office in Kentucky and does not allege that he worked at any RTI office.

The complaint contains no factual allegations about the work locations of any of the other terminated employees (i.e., the putative class members). Schwab acknowledges, however, that he and the other terminated employees

2

did **not** all work at the same location. Copying boilerplate language from the WARN Act regulations, Schwab alleges that RTI "operated the **facilities** where Plaintiff and the other similarly situated individuals worked or were based at, reported to, and received assignments from." (*Id.* ¶ 12 (emphasis added)); *see also* 20 C.F.R. § 639.3(i)(6). The complaint offers no information about these "facilities," such as where they are located, their proximity to each other (or lack thereof), their operational purposes, whether they share staff or equipment, or the number of employment terminations that occurred at each of them.

Schwab alleges that he and the other terminated employees were entitled to 60 days' advance written notice of their terminations under the WARN Act and that RTI failed to provide such notice. (Compl. ¶¶ 17-19.) Schwab asserts his WARN Act claim on behalf of himself and a putative class of "[a]ll employees of Defendant who were terminated pursuant to a mass layoff or plant closing (as those terms are defined in the WARN Act) within 90 days of June 3, 2025." (*Id.* ¶ 20.)

## Questions Presented

First, whether the complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) because it does not and cannot allege a mass layoff or plant closing at Schwab's "single site of employment," as required to state a WARN Act claim.

3

Second, alternatively, whether the complaint's class action allegations should be stricken under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D) because, as a matter of law, they do not satisfy the requirements of Federal Rule of Civil Procedure 23.

## Argument

**I. The Court should dismiss Schwab's complaint with prejudice because it does not and cannot allege a mass layoff or plant closing at a single site of employment.**

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "merely consistent with" liability are insufficient to state a claim because that "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Schwab's complaint fails to pass this standard. It parrots statutory and regulatory language, lacks necessary factual allegations, and does not "permit the court to infer more than the mere possibility of misconduct." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

4

### A. Schwab fails to state a WARN Act claim because he alleges no facts showing a plant closing or mass layoff at a single site of employment.

The WARN Act requires an employer in certain situations to provide sixty days' advance written notice to affected employees before a "plant closing" or "mass layoff." 29 U.S.C. § 2102(a). "When a company fails to provide sufficient notice, the Act allows individual employees suffering an employment loss to bring suit to recover unpaid wages and other benefits for each day of a violation," up to a statutory maximum of sixty days. *Long v. Dunlop Sports Grp. Americas, Inc.*, 506 F.3d 299, 301 (4th Cir. 2007); *see also* 29 U.S.C. § 2104(a).

To state a claim for violation of the WARN Act, a plaintiff must allege facts showing that "(1) the defendant was 'an employer'; (2) the defendant ordered a 'plant closing' or 'mass layoff'; (3) the defendant failed to give to the plaintiff sixty days' notice of the closing or layoff; and (4) the plaintiff is an 'aggrieved' or 'affected' employee." *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 241 (5th Cir. 2022) (quoting *In re TWL Corp.*, 712 F.3d 886, 897 (5th Cir. 2013)). Here, Schwab fails to allege facts showing the second element of a WARN Act claim: that RTI's terminations constituted a plant closing or mass layoff under the statute.

Critically, in order to qualify as a "plant closing" or a "mass layoff," an employment loss event must affect employees at a "single site of

employment." *See* 29 U.S.C. § 2101(a)(2)–(3). That legal requirement exists because the term "plant closing" means "the permanent or temporary shutdown ***of a single site of employment***, or one or more facilities or operating units within ***a single site of employment***, if the shutdown results in an employment loss ***at the single site of employment*** during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2) (emphasis added).

Likewise, a "mass layoff" is a "reduction in force" that is "not the result of a plant closing" and that "results in an employment loss ***at the single site of employment*** during any 30-day period" for (1) at least 50 employees who make up at least 33 percent of the employees at the single site of employment, or (2) at least 500 employees at the single site of employment. *Id.* § 2101(a)(3) (emphasis added).

Although the WARN Act does not define what constitutes a single site of employment, *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007), the Department of Labor's regulations define the term based on an employee's physical presence at a specific place—a "single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). Thus, geographic "proximity and contiguity are the most important criteria" for assessing the existence of a single site of employment. *Frymire v. Ampex Corp.*, 61 F.3d 757, 766 (10th Cir. 1995); *see also* Commentary to WARN Act, 54 Fed. Reg.

6

16042, 16049 (Apr. 20, 1989) ("As a general rule, a geographic connection or proximity is required to define 'single site of employment.'").

Because the WARN Act ties a plant closing or mass layoff event to a single site of employment, a complaint that does not allege the single site of employment at which the plaintiff worked and at which the alleged plant closing or mass layoff occurred fails to state a claim for violation of the WARN Act. *See Karroll v. Car Toys, Inc.*, 765 F. Supp. 3d 506, 516–18 (D.S.C. 2025) (granting motion to dismiss when WARN Act complaint failed to allege single site of employment); *Piron v. Gen. Dynamics Information Tech., Inc.*, No. 3:19-cv-709, 2020 WL 1159383, at *4 (E.D. Va. Mar. 10, 2020) (same); *Parks v. Zayo Bandwidth, LLC*, No. 13-4425, 2016 WL 538328, at *4 (E.D. Pa. Feb. 10, 2016) (dismissing WARN Act claim because plaintiff failed "to allege that any single site of employment experienced employment losses" above the WARN Act's thresholds).

In *Car Toys*, for example, a company that owned and operated hundreds of cell phone kiosks terminated approximately 1,800 kiosk workers, including the plaintiff, without providing any advance notice. 765 F. Supp. 3d at 511. In addition to the kiosk workers, the company terminated all employees who worked at its headquarters. *Id.* at 511–12. After his termination, the plaintiff asserted a WARN Act claim in South Carolina federal court on behalf of himself and other kiosk workers. *Id.* at 512. The

7

company moved to dismiss the plaintiff's claim, arguing that the plaintiff was not entitled to WARN Act notice because he did not allege that he worked at a single site of employment that experienced a mass layoff. *Id*. at 513.

The court granted the company's motion and dismissed the case. In doing so, it rejected all three of the plaintiff's arguments about his claimed single site of employment. *Id*. at 516–22. First, the court rejected the plaintiff's argument that the kiosks in his region—which individually did not employ enough people to reach the WARN Act's numerical thresholds—could be aggregated and considered together as one single site of employment because the complaint failed to show that the kiosks were in sufficiently close geographic proximity to one another to be considered a single site. *Id*. at 516–17. Second, the court rejected the plaintiff's argument that the company was structured as a "truly unusual organizational situation." *Id*. at 519. Finally, the plaintiff argued that his single site of employment was the company's headquarters based on a WARN Act regulation regarding mobile workers, but the court held that the regulation was inapplicable because the complaint did not contain allegations showing that the plaintiff was a "truly mobile worker without a regular, fixed place of work" such that the regulation would apply. *Id*. at 522 (quoting *Meson*, 507 F.3d at 809). Because the plaintiff's complaint failed to identify any single site of employment at which he worked that experienced a mass layoff, the court held that the plaintiff failed to state

8

a claim for violation of the WARN Act and dismissed the complaint. *Id*. at 523.

Here, Schwab's complaint suffers from the same defect as the complaint in *Car Toys*: it lacks any allegations plausibly to support that a mass layoff occurred at any single site of employment, let alone one at which Schwab worked. Schwab alleges that he was one of "at least 200 employees" whom RTI terminated, Compl. ¶ 3, but does not identify the RTI locations at which he or any of the other supposedly terminated employees worked to allow for a plausible inference that a mass layoff occurred at a single site of employment. To the contrary, the Complaint alleges that those employees did **not** all work at the same single site of employment but rather worked at multiple RTI "facilities." *Id*. ¶ 12. As noted above, the complaint offers no information whatsoever about those "facilities," including where they are located, their proximity to each other, what operational purpose the facilities serve, whether the facilities share staff or equipment, or how many of the employment terminations occurred at which of the facilities. *See* 20 C.F.R. § 639.3(i) (listing considerations relevant to determining whether multiple physical sites should be aggregated to form a single site of employment for purposes of the WARN Act).

In short, Schwab's allegation that he and the terminated employees worked at multiple facilities, without any facts to support that a mass layoff

occurred at each of those supposed sites of employment, prevents him from stating a WARN Act claim. *See Meson*, 507 F.3d at 808 ("The statute defines 'mass layoff' as a reduction in work force at a 'single site of employment' that affects at least thirty-three percent of the employees and a minimum of fifty employees in a thirty-day period." (quoting 29 U.S.C. § 2101(a)(3))).

To be sure, Schwab repeatedly characterizes the alleged terminations as a "mass layoff" in his complaint. (*See* Compl. ¶¶ 4, 5, 20, 30, 31.) Such bare legal conclusions, however, do not suffice to state a cause of action. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Car Toys*, 765 F. Supp. 3d at 516 ("The Court, in dismissing Plaintiff's First Amended Complaint [alleging a WARN Act violation], explained that Plaintiff's previously alleged facts were nothing more than recitations of the elements and conclusory.") .

Rather, to state a claim under the WARN Act, Schwab's complaint must contain factual allegations showing that RTI terminated at least the minimum statutory number of employees at a single site of employment. *See Car Toys*, 765 F. Supp. 3d at 516–18. Because the complaint lacks any facts to show plausibly that RTI did so, Schwab fails to state a claim and his complaint should be dismissed.

**B.** **If the complaint is construed as alleging that Schwab is a remote worker, then he is outside the coverage of the WARN Act.**

For the reasons explained above, Schwab alleges no single site of employment, and the complaint should be dismissed for that reason. The complaint, however, suggests that Schwab worked remotely from Kentucky: Schwab resides in Kentucky, does not allege that RTI has any facility in Kentucky, and does not allege that he worked at any RTI facility.

If the Court were to construe the complaint as alleging that Schwab worked for RTI remotely from Kentucky, the same result follows: the complaint fails to state a WARN Act claim. This result occurs because under controlling Fourth Circuit precedent—*Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803 (4th Cir. 2007)—a remote employee's single site of employment is that employee's remote work location. *See Piron v. Gen. Dynamics Information Tech., Inc.*, No. 3:19-cv-709, 2020 WL 1159383, at *3–4 (E.D. Va. Mar. 10, 2020) (relying on *Meson*); *In re Storehouse, Inc.*, No. 06-11144, 2010 WL 4453849, at *3–4 (Bankr. E.D. Va. Nov. 3, 2010) (same). That legal truth means Schwab's single site of employment was his remote work location in Kentucky. Schwab does not and cannot allege that anyone but himself was terminated at this single site of employment.

Accordingly, Schwab fails to allege the numerical thresholds needed to establish a mass layoff or plant closing at his single site of employment in

11

Kentucky, thus defeating his claim. *See Meson*, 507 F.3d at 808 ("[A]n employee who had a fixed workplace where fewer than fifty individuals suffered an employment loss" is generally "outside the protections of the WARN Act"); *see also Wiltz v. M/G Transport Servs., Inc.*, 128 F.3d 957, 958 (6th Cir. 1997) (stating that the WARN Act "is not implicated unless fifty employees are affected at a 'single site of employment'").

We discuss *Piron* and *Storehouse* below, both of which held that a remote employee's single site of employment is his or her remote work location. Because both cases rely on the Fourth Circuit's decision in *Meson*, we address *Meson* first.

In *Meson*, a regional sales manager who worked at a small satellite office in Falls Church, Virginia asserted a WARN Act claim against her employer—a Tampa-based leasing company—after she was terminated. 507 F.3d at 804. Although the manager worked at an office of fewer than fifty people, she regularly traveled for work and reported to a supervisor at the Tampa headquarters. *Id*. Based on her travel and reporting structure, the manager claimed that she was entitled to WARN Act notice and that her single site of employment was the Tampa headquarters. *Id*. at 808. In support of this argument, the manager relied on a Department of Labor regulation, 20 C.F.R. § 639.3(i)(6) (the "mobile worker regulation"), which states:

12

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

*Id*. at 809 (quoting 20 C.F.R. § 639.3(i)(6)).

The district court held that the manager's single site of employment was the Falls Church office and the manager was not entitled to the WARN Act's protections because that office had fewer than fifty employees. *Id*. at 806–07. The Fourth Circuit affirmed the district court and rejected the manager's argument that her single site of employment was the Tampa headquarters based on the mobile worker regulation. *Id*. at 809–10. That regulation, the Fourth Circuit held, applies "only to truly mobile workers without a regular, fixed place of work." *Id*. at 809. By contrast, when an employee has an "undisputed fixed place of work"—regardless of its size—the regulation is inapplicable. *Id*. at 810. Because the manager had a fixed place of work at the Falls Church office, that office was her single site of employment under the WARN Act. *Id*. at 811. And because that office was comprised of only three employees, it "did not have the requisite number of affected employees to trigger application of the WARN Act" and the manager

13

was not entitled to any notice of her termination under the Act. *Id*.[1]

Both *Piron* and *Storehouse* correctly applied *Meson* to hold that the mobile worker regulation does not apply to remote workers and that a remote worker's single site of employment is his or her remote physical location of employment.

In *Piron*, a putative class of former employees asserted a WARN Act claim against their employer after they were terminated with fewer than 60 days' notice. 2020 WL 1159383, at *1. The employees alleged that they "all worked 'remotely' from their homes but reported to, and received assignments from, managers . . . who were situated in [the defendant's] Falls Church, Virginia office." *Id*. When the defendant moved to dismiss the complaint on the grounds that the plaintiffs failed to allege a single site of employment at which they worked, the plaintiffs argued that the mobile worker regulation applied and caused their single site to be the Falls Church office to which they reported. *Id*. at *2. The district court rejected that

---

[1] *See also Car Toys*, 765 F. Supp. 3d at 522 (relying on *Meson* to hold that the allegation that plaintiff's "primary job duties required travel from kiosk to kiosk to cover shifts" was "not sufficient" to "plead that kiosk workers like Plaintiff were truly mobile workers without a regular, fixed place of work" (internal quotations omitted)); *Harbert v. Healthcare Servs. Grp., Inc.*, 391 F.3d 1140, 1143, 1152–53 (10th Cir. 2004) (stating that the mobile worker regulation "governs only employees without a fixed place of work" and "for employees who do have a fixed place of work, there is no reason to believe the [DOL] for purposes of the WARN Act would have named any different place as the employee's employment site").

argument based on *Meson*. *Id*. at *4. It held that allegations that employees "worked remotely" are not sufficient "to bring them within the reach of" the mobile worker regulation, and the plaintiffs' argument to the contrary "simply does not comport with the Fourth Circuit's decision in *Meson*." *Id*. at *4. As a result, the plaintiffs failed plausibly to allege that they worked at a single site of employment and the court granted the defendant's motion to dismiss. *Id*. ("*Meson* set the rule for this Circuit, and viable WARN Act complaints in this Circuit must meet *Meson's* standard.").

The court in *Storehouse* came to a similar conclusion, observing that if a plaintiff-employee worked from home, "his residence in Richmond would have been his single site of employment, since it would have been his fixed workspace when he was not traveling for work." 2010 WL 4453849, at *4. A contrary result, the court held, "would not make sense within the broader outlines of the WARN Act." *Id*. (citing *Meson*, 507 F.3d at 811); *see also Coleman v. Optum, Inc*., No. 1:22-cv-5664, 2023 WL 6390665, at *9 (S.D.N.Y. Oct. 1, 2023) (holding that remote employees did not state a claim for violation of the New York mini-WARN Act and observing that remote employees "do not meet any of the 'single site of employment' definitions outlined in the statute").

The conclusion that a remote worker's single site of employment is his or her remote location of employment is consistent with the statute's

15

underlying policy. A primary purpose of the WARN Act is to require advance notice of a "sudden, significant employment loss" so that "communities could prepare for the economic disruption of a mass layoff." *Meson*, 507 F.3d at 808. For this reason, "the statute and regulations plainly focus on whether the resulting job loss will be concentrated in one geographic area." *Teamsters Local Union 413 v. Driver's, Inc.*, 101 F.3d 1107, 1109–10 (6th Cir. 1996). When a layoff has a "minimal impact" on the community, this concern is not implicated. *Meson*, 507 F.3d at 811 (noting "that the minimal impact on the Falls Church community also militates against a finding that the WARN Act's purposes would be served by applying it to [the plaintiff]"). A company's termination of one remote worker in a community has little or no impact on that community, and thus the WARN Act's purpose is not served by extending the statute to include the remote worker.

Here, if the Court construes the complaint as alleging that Schwab worked for RTI remotely from Kentucky, the cases cited above establish that Schwab's single site of employment was his remote work location in Kentucky, an employment site consisting of just one person—himself. Schwab does not allege that any other terminated employee worked at Schwab's remote work location in Kentucky. Because Schwab worked at a single site of employment with fewer than fifty people, he is outside the protections of the WARN Act and cannot state a claim for violation of its requirements. *Meson*,

16

507 F.3d at 808 ("[A]n employee who had a fixed workplace where fewer than fifty individuals suffered an employment loss would seem, on the face of the statute, outside the protections of the WARN Act."). Schwab's failure and inability to allege that a mass layoff occurred at the single site of employment at which he worked is therefore an incurable defect in the complaint. The Court should dismiss Schwab's WARN Act claim with prejudice.

## II. At a minimum, the Court should strike the class allegations in Schwab's complaint.

Even if Schwab's complaint stated a claim for violation of the WARN Act—it does not—the complaint's class action allegations should be struck under Rules 12(f) and 23(d)(1)(D). Courts will strike class action allegations at the pleading stage when "it is clear from the face of the complaint that the plaintiff cannot meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient for a class." *Hogans v. Charter Commc'ns, Inc.*, 563 F. Supp. 3d 464, 472 (E.D.N.C. 2021); *see also*, *e.g.*, *Pelino v. Ward Mfg., LLC*, No. CIV.A. RDB-14-02771, 2015 WL 4528141, at *4 (D. Md. July 27, 2015) (granting motion to strike class action allegations at the pleading stage because plaintiffs' allegations "distinguish [plaintiffs] from the rest of the class").

Schwab's class action allegations are insufficient for at least three reasons. First, they define the proposed class using legal conclusions

17

regarding the terms "mass layoff" and "plant closing." (*See* Compl. ¶ 20 (defining the proposed class to be: "All employees of Defendant who were terminated pursuant to a ***mass layoff or plant closing (as those terms are defined in the WARN Act)*** within 90 days of June 3, 2025." (emphasis added).) Thus, an individual seeking to determine if he or she is within the proposed class would have to divine the legal meaning of "mass layoff" or "plant closing," which are terms of art informed by statutory text, regulations, and case law. Worse, as explained above, the meanings of those terms depend on the determination of each individual putative class member's single site of employment, thus requiring the individual to conduct another layer of legal analysis simply to determine whether he or she is in the putative class.

Unsurprisingly, courts do not endorse WARN Act class definitions that turn on legal terms of art and conclusions like Schwab's here. *See*, *e.g.*, *Likes v. DHL Exp.*, 288 F.R.D. 524, 529–32 (N.D. Ala. 2012) (holding that WARN Act class definition based on the terms "mass layoff" and "plant closing" was improper and failed ascertainability requirement); *cf. Lester v. Pay Car Mining, Inc.*, No. 5:17-cv-740, 2018 WL 2728033, at *5 (S.D. W. Va. June 6, 2018) (approving WARN Act class definition that identified specific facility at which members worked).

Second, Schwab's use of legal terms to define the proposed class points

18

out the definition's more fundamental problem: it, like the complaint, fails to identify any specific single site of employment at which Schwab or any other allegedly terminated employee worked. Without a defined single site of employment, identifying the individuals comprising the class and resolving their claims would require extensive individualized determinations of each separate individual's employment circumstances and work locations. *See Likes*, 288 F.R.D. at 536 (holding that a plaintiff failed to meet the commonality requirement when a "contested single site of employment issue mean[t] that individualized determinations of fact would be needed"); *Ray v. Mechel Bluestone, Inc.*, No. 5:15-cv-3014, 2016 WL 865322, at *7 (S.D. W. Va. Mar. 2, 2016) (denying class certification when plaintiffs failed to show that the putative class members worked at the same single site of employment).

The need for such individualized determinations establishes that Schwab's proposed class could not meet the ascertainability, commonality, and predominance requirements for class certification and is not "sufficiently cohesive to warrant adjudication by representation." *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 679 (4th Cir. 2024) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The same result holds if the Court construes the complaint to allege that Schwab worked for RTI remotely from Kentucky. Then, Schwab is the ***only*** putative class member at his single site of employment and could not meet any of the requirements of Rule 23.

19

Finally, the complaint's class action allegations are deficient because they define the class with reference to the 90-day period surrounding June 3, 2025, (Compl. ¶ 20), but allege no basis for using such a 90-day period. The WARN Act defines a "mass layoff" and "plant closing" with reference to a ***30-day*** period. *See* 29 U.S.C. § 2101(a)(2)-(3). The statute allows aggregation of employment losses over a 90-day period only in the narrow circumstance when there have been "employment losses for 2 or more groups at a single site of employment, ***each of which*** is less than the minimum number of employees specified [in the WARN Act] but which in the aggregate exceed that minimum number." 29 U.S.C. § 2102(d) (emphasis added). Thus, 90-day aggregation is not allowed when there has been an employment loss that itself constitutes a mass layoff or plant closing. *Easom v. US Well Servs., Inc.*, No. 20-2995, 2023 WL 6279359, at *6 (S.D. Tex. Sept. 26, 2023) (holding that 90-day aggregation applies only to employment actions "each of which separately is not of sufficient size to trigger WARN coverage" (quoting 20 C.F.R. § 639.5(a)(1)(ii))).

Here, although the complaint seeks to define the class using a 90-day period, it contains no allegations that would permit 90-day aggregation under Section 2102(d). In particular, the complaint contains no allegations referring to other employment losses in that 90-day period, let alone allegations

showing that each of those employment losses is below the WARN Act thresholds, as is required before Section 2102(d) allows 90-day aggregation.

For all of these reasons, Schwab's factual allegations fail plausibly to show that his proposed class could meet the Rule 23 requirements for class certification. While the Court should dismiss the complaint with prejudice, at a minimum, it should strike the class allegations.

## Conclusion

The Court should dismiss the complaint with prejudice under Rule 12(b)(6). At a minimum, the Court should strike the class action allegations under Rules 12(f) and 23(d)(1)(D).

This 4th day of August, 2025.

/s/ Mark A. Hiller

Mark A. Hiller
N.C. Bar No. 50004
mhiller@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
1450 Raleigh Road, Suite 100
Chapel Hill, North Carolina 27517
Phone: 919.328.8800

Julian H. Wright, Jr.
N.C. Bar No. 19345
jwright@robinsonbradshaw.com

Brendan P. Biffany
N.C. Bar No. 54761
bbiffany@robinsonbradshaw.com

21

ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Phone: 704.377.2536

*Attorneys for Defendant*

## <u>Certificate of Compliance</u>

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1)) as reported by the word-processing software.

This 4th day of August, 2025.

/s/ Mark A. Hiller
Mark A. Hiller