UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:25-cv-481

| | |
|---|---|
| PHILIP SCHWAB, individually and on behalf of those similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>RESEARCH TRIANGLE INSTITUTE d/b/a RTI INTERNATIONAL,<br><br>  Defendant. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS** |

  Plaintiff Philip Schwab respectfully submits this response in opposition to Defendant Research Triangle Institute's (RTI) Motion to Dismiss and to Strike Class Allegations. D.E. 8, 9. After misconstruing the allegations in the Complaint, RTI's Motion incorrectly asserts that remote workers are not protected by the Worker and Adjustment Retraining (WARN) Act. These arguments are inappropriate to raise at this stage and are wrong on their face in any event. The request to strike certain allegations from the complaint is likewise premature. The Motion should be denied in its entirety.

### FACTUAL BACKGROUND

  On a motion under Rule 12(b)(6), "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). Thus, at this stage, the Court must assume the facts in the Complaint are true. RTI is an employer in Durham, North Carolina. D.E. 1 at ¶¶ 1, 11. Plaintiff is a citizen of Kentucky and was employed by RTI

for three years. D.E. 1 at ¶¶ 10.[1] On or about May 20, 2025, RTI informed Plaintiff that his job would be terminated on June 3, 2025. D.E. 1 at ¶¶ 14–16. Consistent with this plan, RTI terminated Plaintiff's employment on June 3, 2025. D.E. 1 at ¶ 4. RTI did not provide 60 days' advance notice of these terminations to Plaintiff and at least 200 other employees. D.E. 1 at ¶¶ 3, 5, 13, 17. The terminations constituted at least 50 employees and more than a third of the employees employed by the Durham location. D.E. 1 at ¶¶ 3, 5, 17. Plaintiff filed this Complaint on June 17, 2025, D.E. 1, and on August 4, 2025, RTI filed its Motion to Dismiss, D.E. 8, 9.

## ARGUMENT

In a lengthy motion to dismiss, RTI attempts to do exactly what the WARN Act precludes: evade liability by engaging in definitional games. First, RTI misconstrues the allegations in the complaint to argue that because Plaintiff was a remote employee, so the WARN Act does not cover him. But this Court must accept the facts in the complaint as true, and the complaint does not allege anywhere that Plaintiff worked remotely, let alone use the word "remote." RTI is asking the Court to do what it cannot at this stage—draw an unwarranted inference in its favor about the facts and then dismiss on the law. That is not how motions to dismiss work.

---

[1] RTI's Motion incorrectly asserts that the Complaint identifies Plaintiff as a remote employee. D.E. 9 at 7 (using blue pagination). Nowhere does the Complaint use the term "remote." It says he was employed by RTI, was a resident of Kentucky, and that RTI operated the facilities from which Plaintiff received assignments. D.E. 1 at ¶¶ 10, 12, 13.

2

But RTI goes even further. It asserts *categorically* that *no* remote employee is covered by the WARN Act. This argument is not only wrong on its face (because the WARN Act does cover remote employees) but premature. Finally, in a throwaway argument, RTI avers that certain allegations should be struck from the complaint. Motions to strike at the motion to dismiss stage are doubly disfavored. This is a simple WARN Act case that RTI is attempting to muddy at the outset. The Court should decline RTI's invitation to contravene decades of caselaw holding that WARN Act cases are fact-intensive and ill-suited to resolution at the pleading stage. The motion should be denied.

**I.    Inquiries Under the WARN Act Are Necessarily Fact-Intensive, and This Court Must Accept All Well-Pled Allegations in the Complaint as True.**

This is a case under the WARN Act. *See* 29 U.S.C. § 2101. The WARN Act is a remedial statute designed to give workers time to adjust to loss of employment. *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir. 2001) ("While some provisions of the Act are punitive in nature, the primary purpose of the Act is remedial."). Congress passed the Act in 1988 to secure employees against sudden and significant employment loss. *Hodge v. Synergy Inspections, LLC*, No. 5:24-CV-00177, 2025 WL 1690151, at *1 (S.D.W. Va. June 16, 2025) (noting history of Act). Employers have several defenses against WARN Act claims, including business circumstances which are not reasonably foreseeable. 29 U.S.C. § 2102(b)(2)(A); *Loc. Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (noting that exceptions to employers are narrowly construed).

Because the WARN Act's exceptions function as affirmative defenses, the employer bears the burden of proving that an exception applies. *See* 20 C.F.R. § 639.9; *Easom v. US Well Servs., LLC*, No. CV H-20-2995, 2023 WL 6279359, at *11 (S.D. Tex. Sept. 26, 2023) ("The WARN Act's exceptions are affirmative defenses. The employer has the burden to prove that an exception applied to the layoffs."). WARN Act defenses are very fact-intensive and thus not generally susceptible to a Rule 12(b)(6) motion. *In re Dewey & LeBoeuf LLP*, 487 B.R. 169, 175 (Bankr. S.D.N.Y. 2013); *In re Protected Vehicles, Inc.*, 392 B.R. 633, 636 (Bankr. D.S.C. 2008) ("Whether a particular defense is available, as well as the determination of whether proper notice was provided, is fact intensive[.]"); *see also Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 460 (M.D.N.C. 2016) ("Because the burden of establishing an affirmative defense rests on the defendant asserting it, a motion under Rule 12(b)(6) . . . is generally not the appropriate vehicle to mount such a challenge.") (quoting *McQuade v. Xerox Corp.*, No. 5:10-CV-149-FL, 2011 WL 344091, at *3 (E.D.N.C. Feb. 1, 2011)). That is what RTI is doing here—asserting an affirmative defense to liability packaged into a motion to dismiss.

A valid WARN Act claim has three elements: "(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1281 (11th Cir. 2013) (quoting *Allen v. Sybase, Inc.*, 468 F.3d 642, 654 (10th Cir. 2006)). In general, "WARN Act claims are fact intensive as are the affirmative defenses." *Philips v. Munchery Inc.*, No. 19-CV-00469-JSC, 2021 WL 326924, at *6 (N.D.

4

Cal. Feb. 1, 2021); *see also In re Transcare Corp.*, 614 B.R. 187, 209 (Bankr. S.D.N.Y. 2020) ("The UBC defense is fact intensive and thus not conducive to resolution through dispositive motion practice."). Here, Plaintiff properly asserts the elements of a WARN claim. *E.g.*, D.E. 1 at ¶¶ 2–6, 10–13, 17, 19.

In its motion, RTI assumes that Plaintiff was working remotely, and then bases its motion to dismiss on that flawed assumption. But like every other case in the legal system, in the context of the Warn Act, "a district court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Schmidt v. FCI Enters. LLC*, No. 1:18-CV-1472, 2019 WL 8888102, at *1 (E.D. Va. Jan. 22, 2019) (quoting *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012)) (denying motion to dismiss in WARN Act case where Plaintiffs sufficiently pled that defendant had a single site of employment). There is no allegation in the complaint that this Plaintiff was working remotely. So any argument that assumes he was working remotely (as a fact, when the complaint does not actually say that) improperly draws an inference in favor of *the defendant*.

RTI has inverted the standard applicable to motions to dismiss by asserting that an inference should be drawn in its favor and that it is entitled to dismissal based on that inference. The standard is to draw inferences in plaintiff's favor, and if the claim is plausible, the Court must deny the motion to dismiss. *E.g.*, *Barbour v. Garland*, 105 F.4th 579, 597–98 (4th Cir. 2024) ("But that is contrary to the clear and controlling precedents, which require us to draw all reasonable inferences in Barbour's favor, and which oblige

Barbour only to plead enough facts to render it plausible that the DEA refused to hire her as a Special Agent because of her lawsuit against the FBI.").

The Complaint alleges that Plaintiff was employed by RTI and that RTI operated the facilities from which Plaintiff received assignments. D.E. 1 at ¶¶ 10, 12, 13. So anything else—like an argument that Plaintiff is ineligible to seek relief under the WARN Act because he worked remotely—is based on an inference that flies in the face of the facts alleged in the Complaint. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) ("Regarding dismissal under Rule 12(b)(6), we accept the well-pled allegations of the complaint as true, and we construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."); *see also* 5C Charles A. Wright et al., *Federal Practice and Procedure* § 1363 (3d ed.) ("The general rule articulated in countless judicial opinions and noted in the notes to the discussion above is that *all* reasonable factual inferences will be drawn to aid the pleader and ambiguities will be resolved in the pleader's favor." (emphasis added)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."). RTI's motion invites the Court to do precisely what it cannot at this stage—infer facts from the complaint that are not actually pled and then rule in RTI's favor based on those improperly drawn inferences in its favor.

## II. The "Single Site of Employment" Question is Ill-Suited to Resolution Now.

Mr. Schwab's work location—who he reported to, where his work assignments came from, and how his work fit into the company—are all questions discovery will bear out. Nowhere does the Complaint use the term "remote."

This is a putative class action – Plaintiff is not required to establish every fact pertinent to where all of these terminated employees were working at the outset. The WARN Act has simple elements (mass layoff or plant closing by an employer who fired employees entitled to notice), and those are sufficiently alleged here. D.E. 1 at ¶¶ 2–6, 10–13, 17, 19.

RTI offers a laundry list of information that is allegedly "missing" from the complaint: information about the facilities, their operational purposes, and whether they share staff or equipment. D.E. 9 at 8 (using blue pagination). That is for discovery to bear out. Fed. R. Civ. P. 8(a)(2); *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (cleaned up)); *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 612 (D. Md. 2008) ("Obviously a plaintiff need not prove all elements of his claim in the complaint.") (emphasis in original). And as discussed above, WARN Act cases are fact-intensive. The elements are properly alleged here. D.E. 1 at ¶¶ 2–6, 10–13, 17, 19. On the one hand, RTI says the complaint is not detailed enough to survive a Rule 12(b)(6) motion. On the other hand, RTI says that the complaint says enough about Plaintiff's remote status

to dismiss the case on an affirmative defense. This contradiction is precisely why courts have said WARN Act defenses are not well suited to resolution pre-discovery. *In re Dewey & LeBoeuf LLP*, 507 B.R. at 528.

But RTI is trying anyway, alleging in bold repeatedly that this complaint does not meet the standard for a "single site of employment." D.E. 9 at 11–15. It crows that the complaint does not allege where the alleged layoff occurred. But it does: Durham, North Carolina, and potentially other locations too. D.E. 1 at ¶¶ 2, 11, 12. Leaving RTI's assertions aside, the question of whether an employment location constitutes a "single site of employment" is a mixed question of law and fact not susceptible to a motion to dismiss. *See, e.g.*, *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1126 (5th Cir. 1997) ("The issue of whether multiple work locations constitute a 'single site of employment' under WARN is a mixed question of law and fact.") (appeal of summary judgment ruling); *McClain v. Laurel St. Art Club, Inc.*, 925 F. Supp. 496, 497 (E.D. Ky. 1995) (where court held bench trial to resolve issue of single site of employment). Resolving a mixed question of fact and law like this one on a motion to dismiss would necessarily draw an inference in favor of the defendant. That is not permitted at this stage.

Courts across the country have held in any event that resolving factual disputes about remote employees is not suited to a Rule 12 motion. Especially where plaintiff-employees may have been working remotely prior to their termination, these questions are particularly poorly suited to a ruling on a 12(b)(6) motion. *See Smith v. Zulily, LLC*, No. C24-1480-KKE, 2025 WL 1383670, at *3 (W.D. Wash. May 13, 2025) ("Defendants have

8

not cited authority persuading the Court that its merits arguments should be resolved now, and have not cited binding authority indicating that Plaintiffs categorically cannot, as a matter of law, assert a claim for a WARN Act violation as remote workers when the allegations of the complaint are accepted as true.") (denying motion to dismiss). Assessing the caselaw in this arena, the court noted that the case was in the early stages: "The Court is aware of authority indicating that fact questions abound with respect to the availability of WARN Act protection." *Id.* ("Whether multiple work locations constitute a 'single site of employment' under WARN is a mixed question of fact and law.")). That is the correct analysis here too.

    This cautious approach is consistent not only with decades of WARN Act caselaw holding that many issues are fact-intensive, but with the most basic and familiar standards of Rule 12 motions. *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 767 (D. Md. 2008) ("The issue in reviewing the sufficiency of the pleadings in a complaint is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims."). This is the approach that most courts have taken in the context of the WARN Act and potentially remote workers at the beginning stages of cases. *See, e.g.*, *Rodriguez v. Kaseya Holdings, Inc.*, No. 1-24-CV-752-DAE, 2025 WL 1356397, at *4–5 (W.D. Tex. Mar. 31, 2025), *report and recommendation adopted*, 2025 WL 1154528 (W.D. Tex. Apr. 21, 2025) ("The undersigned finds these allegations sufficiently pleaded to state a claim under the WARN Act and that any factual disputes are better left for later stages of the litigation.") (remote worker who reported to Miami headquarters);

9

*Belendez-Desha v. JAF Commc'ns, Inc.*, No. 24-CV-00741 (MMG), 2024 WL 5155748, at *3–4 (S.D.N.Y. Dec. 18, 2024) (declining to resolve question of remote workers at class certification stage); *Murphy v. LenderLive Network, Inc.*, No. 13-CV-03135-RBJ, 2014 WL 5396165, at *2–3 (D. Colo. Oct. 22, 2014) ("The plaintiffs seek information about the remote employees, such as how their work was assigned and by whom, and to which offices their supervisors reported. That is what discovery is for.").

The cases RTI relies on do not support its argument. For example, *Karroll* is wholly inapposite because it involved employees who were required to service various regional physical kiosks. *Karroll v. Car Toys, Inc.*, 765 F. Supp. 3d 506, 511 (D.S.C. 2025) ("Plaintiff was frequently required to rotate to different kiosks in the geographical region referred to as Region NEF to cover shifts."). There, the plaintiff's "required movement was temporary and just as a fill-in for absences caused by other employees." *Id.* at 522. The *Piron* decision is not helpful to RTI because that same court issued a more recent opinion. *Piron v. Gen. Dynamics Info. Tech., Inc.*, 2020 WL 1159383 (E.D. Va. Mar. 10, 2020). The far more relevant and recent decision from the same court (in fact, in the same case) is *Piron v. Gen. Dynamics Info. Tech., Inc.*, 2022 WL 363958 (E.D. Va. 2022). There, the court certified a WARN class that included remote workers based on allegations showing they could qualify as "mobile workers" under WARN regulations. *Id.* at *13. Ultimately, the court decided to kick the decision about "single site of employment" to summary judgment or trial. *Id.* Finally, in the *Parks* case, the plaintiff sued no less than fourteen companies and multiple individuals he alleged were employing him in a joint business

10

enterprise. *Parks v. Zayo Bandwidth, LLC*, No. CV 13-4425, 2016 WL 538328, at *1 (E.D. Pa. Feb. 10, 2016). Not so here. *Piron* is actually helpful to Plaintiff here. The other cases are merely offered by RTI to try to escape this case early.

**III.   Remote Workers & The WARN Act**

Next, RTI baldly contends that remote workers are completely outside the coverage of the WARN Act. D.E. 9 at 16. Practically, this argument would mean that vast swaths of the American economy are insulated from WARN Act liability when an employer decides to lay off a portion of its workforce. Not only have many courts rejected this proposition (as explained below), but taken to its logical extreme, RTI's argument would effectively render the WARN Act a dead letter. That is not and cannot be the law. Further, RTI's assertion finds no support in the very text of the Act itself.

First, Plaintiff is clearly an "affected employee": he lost his job. 29 U.S.C. § 2101(a)(5) ("[T]he term 'affected employees' means employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer[.]"). Next, the term "single site of employment" is defined in the Code of Federal Regulations. 20 C.F.R. § 639.3(i). Plaintiff could meet any number of permutations of this definition, which is broad in scope. Contrary to RTI's assertions, that definition explicitly includes remote workers in a vast array of definitions phrased in the disjunctive:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as

11

> their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i)(6).

Each clause of this definition could include a wide variety of employment situations. It would include Arthur Miller's Willy Loman under the clause covering "workers whose primary duties require travel from point to point[.]" And it could include Plaintiff, whose "primary duties involve[d] work outside any of [his] employer's regular employment sites" where his work originated from the Durham, North Carolina location ("from which [his] work [was] assigned" or "to which [he] report[ed]"). D.E. 1 at ¶¶ 10–12. Plaintiff could also qualify under the "outstationed" clause.² The regulation also contains a safety valve clause. 20 C.F.R. § 639.3(i)(8). That clause includes a warning that the application of the definition of "single site of employment" is not a license to evade liability: "The term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. *The application of this definition with the intent*

---

² 20 C.F.R. § 639.3 does not explicitly define the term "outstation." But as the originating regulation explained, the word was intended to cover flexible work situations incapable of easy definition:
> These workers may not have an assigned home base, but *they must get their orders or assignments from somewhere*, even if that place changes from time to time. In order to cover this situation and the situation of outstationed workers and traveling workers who report to but do not work out of a particular office, that part of the regulation relating to mobile workers has been revised to clarify that *such workers should be treated as assigned to their home base or to the single site from which their work is assigned or to which they report*.

Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16042-01, 16051, 1989 WL 278605) (emphasis added). Plaintiff here got his orders and assignments from somewhere – Durham, North Carolina. D.E. 1 at ¶¶ 10–12.

12

*to evade the purpose of the Act to provide notice is not acceptable.*" *Id.* § 639.3(i)(8) (emphasis added). That is precisely what RTI is doing here—attempting to evade the purpose of the Act. Remote employees may meet any number of the clauses in 20 C.F.R. § 639.3(i)(6), (8) just from a plain reading of the regulation. And indeed RTI has jumped the gun by saying Plaintiff worked remotely. The Complaint does not say that. But even if he was a fully remote employee (which discovery will bear out), he would be covered by the WARN Act.

Courts have buttressed this textual reading: "[r]emote employees are 'undoubtedly' covered in the text of the regulation." *In re Party City Holdco Inc. Hanlon v. Party City Holdco, Inc.*, No. 24-90621, 2025 WL 1888172, at *6 (Bankr. S.D. Tex. July 8, 2025) (quoting 20 C.F.R. § 639.3(i)(6) and pointing to *Hoover v. Drivetrain LLC*, 2022 WL 3581103, at *4 (Bankr. D. Del. Aug. 19, 2022)); *see also Hoover*, 2022 WL 3581103, at *4 ("While the focus of this regulation, which apparently dates back to 1989, appears to be more on 'mobile' employees—those who travel regularly rather than reporting to an office—than those who telecommute from home offices, the text of the regulation undoubtedly covers remote employees."). Remote workers could, depending on the exact facts, fall into any number of the situations outlined in 20 C.F.R. § 639.3(i)(6) or 20 C.F.R. § 639.3(i)(8). They could be "required to travel from point to point," be "outstationed," or perhaps most pertinently, their "primary duties involve work outside any of the employer's regular employment sites" and their work is "assigned" from one "single site." The regulation is wholly disjunctive.

RTI is simply wrong to say that remote employees, no matter the facts, are never entitled to WARN Act protections. That is simply not a correct reading of 20 C.F.R. § 639.3(i)(6) or the caselaw applying it. This Court need not at this early stage of *this* case decide the broad question of whether every remote employee across the United States is categorically barred by the WARN Act from seeking relief. Not only is that proposition wrong on its face, but this Court does not have to decide whether it is right or wrong now.

Taken to its logical conclusion, RTI's position would mean that much of America's labor market would surrender protections under the WARN Act by working remotely. Plaintiff should not be punished for simply participating in an economy that has evolved at a breakneck pace to take hits on the chin like the COVID-19 pandemic.[3] The cases cited by RTI do not show otherwise.

*Meson* is not apposite. Decided decades before remote work was common, that case concerned a manager who managed an entire office of other employees. *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 810 (4th Cir. 2007) ("Meson was not a 'mobile worker': she 'work[ed] out of a particular office' in Falls Church, Virginia and also managed the

---

[3] The Department of Labor issued the operative version of 20 C.F.R. § 639.3 in 1989, decades before remote work became as ubiquitous as it is today. *See* 54 Fed. Reg. 16042 (1989). Other, more recent regulations promulgated by the Department explicitly encompass remote work. 29 C.F.R. § 825.111(a)(2) ("An employee's personal residence is not a worksite in the case of employees, such as salespersons, who travel a sales territory and who generally leave to work and return from work to their personal residence, or employees who work at home, as under the concept of flexiplace or telecommuting. Rather, their worksite is the office to which they report and from which assignments are made.") (FMLA context, last revised in 2023). Imagine if an employee's capability to take FMLA leave were determined by whether they worked remotely. The WARN Act is not frozen in 1989, as evidenced by the broad definitions in 20 C.F.R. § 639.3(i)(6), (8).

two other employees in that office.") (appeal from summary judgment ruling). So Meson was not remote at all. Her job was "similar to that of most other branch managers." *Id.* *Storehouse* concerned an employee who worked out of a different office space of the same company. *In re Storehouse, Inc.*, No. 06-11144-SSM, 2010 WL 4453849, at *1 (Bankr. E.D. Va. Nov. 3, 2010) ("He opted not to work from home because he felt he was more efficient when working in a professional environment. Instead, he was provided with office space in the back of a small Storehouse retail location in the Stony Point Fashion Park in Richmond, Virginia.") (ruling on objection to bankruptcy claim following evidentiary hearing where claimant appeared in person). *Storehouse* does not apply here.

The proposition asserted by RTI is somewhat circular, cruel, and ultimately self-serving. D.E. 9 at 21 ("Schwab's single site of employment was his remote work location in Kentucky, an employment site consisting of just one person—himself."). That sentence draws multiple inferences in RTI's favor: (a) that Plaintiff worked fully remotely (not in the complaint); (b) that a fully remote employee could never fall under the definitions articulated in 20 C.F.R. § 639.3(i)(6) (not the law); and (c) that a fully remote employee could never fall under the safety valve articulated in 20 C.F.R. § 639.3(i)(9) (also not the law). Even if Plaintiff were working fully remotely (and this Court cannot infer from the facts in the complaint that he was), then he still was not taking work-related instructions from his cat lounging on his couch in Kentucky. D.E. 1 at ¶¶ 10–12 (allegations that Plaintiff was employed at RTI and received assignments from North Carolina). The details of Plaintiff's work arrangement will be better understood once discovery is underway, but

15

in general, remote workers "must get their orders or assignments from somewhere." 54 Fed. Reg. 16042-01, 16051, 1989 WL 278605. There is no basis for RTI's broad assertion.

## IV. Motion to Strike

At the back of its brief, RTI alleges that the complaint's class allegations should be struck under Rule 12(f). Not only are motions to strike disfavored generally, but motions to strike class allegations pre-discovery are even more disfavored. *See, e.g.*, *Mey v. Levin*, No. 5:23-CV-46, 2023 WL 12089839, at *3 (N.D.W. Va. Sept. 15, 2023) ("Generally, class allegations should not be addressed at the pleading stage. This Court has recognized that pre-discovery motions to strike class claims are consistently denied."); *Smith v. Washington Post Co.*, 962 F. Supp. 2d 79, 89–90 (D.D.C. 2013) ("First, a motion to strike is a disfavored, drastic remedy, and courts favor an adjudication on the merits. Second, courts rarely grant motions to dismiss or strike class allegations before there is a chance for discovery." (cleaned up)); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1351 (S.D. Fla. 2013) (same principle); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking, then, motions of this kind are deemed procedurally premature."). This request should be denied on that basis alone.

As the cases cited above show, even when certifying classes, courts tend to determine that issues of remote employees are not suitable for resolution. This request is doubly inapposite now, just after the case has been filed. Once again, the cases cited by RTI are wholly irrelevant. The *Likes* case concerned independent contractors, not

16

employees. *Likes v. DHL Exp.*, 288 F.R.D. 524, 531 (N.D. Ala. 2012). The *Lester* case *approved* a motion for class certification regarding a mine layoff in West Virginia. *Lester v. Pay Car Mining, Inc.*, No. 5:17-CV-00740, 2018 WL 2728033, at *8 (S.D.W. Va. June 6, 2018). And the *Ray* case concerned multiple different mine sites. *Ray v. Mechel Bluestone, Inc.*, No. 5:15-CV-03014, 2016 WL 865322, at *6 (S.D.W. Va. Mar. 2, 2016).

RTI's allegations that the class period of 90 days is too extensive fare no better. This is essentially an argument RTI foisted from its soon-to-be-filed opposition to class certification pasted into the very back of a motion to dismiss, where it does not belong. *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2015 WL 13636655, at *3 (N.D.W. Va. Oct. 15, 2015) (motions to strike class allegations should be denied "at the pleading stage," before discovery, because the "shape and form" of a class evolves through discovery). And even then, 90-day periods may be appropriate. *Garrett v. SCVRH LLC*, No. CV-22-00358-TUC-RCC, 2023 WL 2354581, at *4 (D. Ariz. Mar. 3, 2023) (similar 90-day language in WARN Act case, granting motion for class certification).

RTI is simply throwing anything at the wall to see if something sticks in the case's early stages.

## CONCLUSION

RTI's lengthy motion obscures that the questions presented on this Motion are simple. RTI would have this Court articulate a broad rule that an employee working remotely can *never* bring a WARN Act claim. This goes too far. Decades of caselaw have shown that WARN Act cases are heavily fact-intensive. But at this stage of the case, the

17

Court need not decide whether Plaintiff fits perfectly into one clause or another of 20 C.F.R. § 639.3(i)(6) or 20 C.F.R. § 639.3(i)(8). That is what discovery is for. RTI is simply trying to do what the WARN Act caselaw explicitly suggests is not appropriate: resolve a complex mixed question of fact and law at the pleadings stage and draw inferences in favor of the defendant. The Court should decline this invitation and move this case to the next stage. And the motion to strike should be denied as premature.

Dated: August 25, 2025

Respectfully submitted,

/s/ Troy Shelton
Troy D. Shelton
N.C. Bar No. 48070
tshelton@dowlingfirm.com
**DOWLING PLLC**
3801 Lake Boone Trail, Suite 260
Raleigh, NC 27607
Tel: (919) 529-3351

J. Gerard Stranch, IV (TN BPR #23045)*
Michael C. Tackeff (TN BPR #036953)*
**STRANCH, JENNINGS, & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: 615/254-8801
Facsimile: 615/255-5419
gstranch@stranchlaw.com

Lynn A. Toops*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenmalad.com

Samuel J. Strauss*
Raina C. Borrelli*

18

**STRAUSS BORRELLI, LLP**
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
sam@straussborrelli.com
raina@straussborrelli.com

*Special Appearance Forthcoming*

*Counsel for Plaintiff and the Proposed Class*

19

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the word-count limitation in Local Rule 7.3(d).

/s/ Troy D. Shelton  
Troy D. Shelton