UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PHILIP SCHWAB, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RESEARCH TRIANGLE INSTITUTE, )<br>d/b/a RTI International, )<br>)<br>Defendant. ) | Case No. 1:25CV481 |

## OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion to Dismiss or Strike [Doc. #8] filed by Defendant Research Triangle Institute ("Defendant"). In this case, Plaintiff Philip Schwab ("Plaintiff") contends that Defendant, his employer, terminated him and at least 200 other employees without 60 days' notice, in violation of the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101 *et seq.* Defendant moves to dismiss the Complaint for failure to state a claim and moves in the alternative to strike the Complaint's class allegations. For the reasons stated below, the Court recommends that the Motion to Dismiss be granted without prejudice, but if Plaintiff files an Amended Complaint within 14 days of the date of this Order, the Motion to Dismiss will be rendered moot, and Defendant will then have 30 days to file a renewed Motion as to the Amended Complaint. The Court further recommends that the Motion to Strike be denied as moot.

I.  Background

This action arises out of Defendant's alleged termination of "over 200 employees and 33% of the workforce," including Plaintiff, "without 60 days' advance notice." (Compl. [Doc. #1] ¶ 13.) According to the Complaint, Plaintiff received notice on May 20, 2025, that his employment would be terminated on June 3, 2025. (Compl. ¶¶ 4, 14, 16.) Defendant "operated the facilities where Plaintiff and the other similarly situated individuals worked or were based at, reported to, and received assignments from." (Compl. ¶ 12.) The Complaint also includes class action allegations and purports to define a class of over 200 former employees of Defendant, terminated "within 90 days of June 3, 2025," who each were entitled to receive 60 days' notice before their terminations under the WARN Act. (Compl. ¶¶ 20-21.) Plaintiff is a resident of Kentucky, and Defendant is a North Carolina company with its principal place of business in Durham. (Compl. ¶¶ 10-11.) The Complaint does not specify where Plaintiff or the other terminated employees worked and does not contain details about the types of jobs these employees held.

Plaintiff filed his Complaint on June 17, 2025. On August 4, 2025, Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike the class allegations under Rules 12(f) and 23(d)(1)(D).

II.  Legal Standard

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678; Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023). Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

In the alternative, Defendant moves to strike the class allegations from Plaintiff's Complaint. A party may move the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike "are to be granted infrequently." Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 247 (4th Cir. 2007) (citing Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000).

III. <u>Discussion</u>

    A.    <u>Motion to Dismiss</u>

Defendant contends that Plaintiff failed to state a claim upon which relief can be granted by failing to allege a plant closing or mass layoff. (Def.'s Mot. at 2; Def.'s Br. [Doc. #9] at 4-6.) The WARN Act requires employers ordering a "plant closing or mass layoff" to first provide 60 days' written notice to affected employees or their representatives and to the state and local governments where layoffs will occur. 29 U.S.C. § 2102(a). "[T]he WARN Act was enacted, in part, to prepare communities for the economic disruption of a mass layoff." <u>Meson v. GATX Tech. Servs. Corp.</u>, 507 F.3d 803, 811 (4th Cir. 2007) (citing 20 C.F.R. § 639.1(a)).

The WARN Act provides "*two* requisites for an employer's obligation to give notice. . . . The *first* is that the employer must order either a 'plant closing' or a 'mass layoff' as defined by the Act, and the *second* is that the employees considered for notice must be 'employees who may reasonably be expected to experience an employment loss *as a consequence of a proposed plant closing or mass layoff*.'" <u>United Mine Workers of Am. v. Martinka Coal Co.</u>, 202 F.3d 717, 723 (4th Cir. 2000) (citations omitted) (emphasis in original). "It is this causal connection between the plant closing [or mass layoff] and the laid-off employees . . . that serves to define the class of employees to whom notice is due." <u>Id.</u>

The Act defines "plant closing" as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees. . . .'" 29 U.S.C. § 2101(a)(2). The Act

4

also defines "mass layoff" as a reduction in force that "results in an employment loss at the single site of employment during any 30-day period" for either (i) at least thirty-three percent of employees and at least 50 employees, or (ii) if not thirty-three percent, at least 500 employees. § 2101(a)(3). Part-time employees do not count towards these totals. § 2101(a)(2)-(3). For either a mass layoff or a plant closing, "a plaintiff must demonstrate that there are 50 employees, not including part-time employees, at a single site of employment, who suffered an employment loss." Karroll v. Car Toys, Inc., 765 F. Supp. 3d 506, 513 (D.S.C. 2025). Either form of mass-termination also must occur within a 30-day time period, though the Act has a provision for aggregating sets of related employment losses "for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees . . . but which in the aggregate exceed that minimum number," if the losses are related and occurred within a 90-day period. §§ 2102(d), 2101(a)(2)-(3).

"The WARN Act itself does not define 'single site of employment.'" Meson, 507 F.3d at 808. According to regulations promulgated by the Secretary of Labor, a single site of employment can be "either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1).[1] "Separate buildings or areas which are not directly connected or in immediate

---

[1] Since the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), "[d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 155 (2025). However, this change did not "call into question prior cases," which "are still subject to statutory *stare decisis* despite our change in interpretive methodology." Loper Bright Enters., 603 U.S. at 412; see also Chavez v. Bondi, 134 F.4th 207, 213 (4th Cir. 2025) ("Loper Bright doesn't wipe away the results of our prior decisions deferring to the [agency's] reasonable interpretations of the law.").

In this case, Fourth Circuit precedent has embraced the WARN Act regulations under 20 C.F.R. § 639, including the Secretary's definition of a single site of employment. See Meson, 507 F.3d at 809; United Mine Workers, 202 F.3d at 720 n.2. The Parties also do not dispute the applicability of § 639.3(i). The Court notes that even

5

proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." § 639.3(i)(3). However, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." § 639.3(i)(4). The regulations also account for traveling workers and for some employment arrangements that may be difficult to categorize:

> (6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.
> . . .
> (8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

§ 639.3(i)(6), (8).

The Court of Appeals for the Fourth Circuit has held that subpart (6) above applies "only to truly mobile workers without a regular, fixed place of work," interpreting the example of "salespersons" to refer specifically to "traveling salespersons who work primarily out of their homes or cars, rather than those who work out of fixed offices." Meson, 507 F.3d at 809.

In sum, a WARN Act claim requires a plaintiff to allege a mass layoff or plant closing, either of which requires establishing (1) that the employer ordered a reduction in force or the

---

in the absence of these regulations, a plain reading of the statute would require a conclusion that the term "single site of employment" has some sort of geographic limitation in order to be a "single" location.

closing of a work location, (2) a loss of a sufficient number of full-time employees at a single site of employment, (3) within a 30 day period (unless the 90-day exception applies), and (4) a causal connection between the order and the employment losses. 29 U.S.C. §§ 2101(a)(2)-(3), 2102(d). If the plaintiff can establish a mass layoff or plant closing, the plaintiff must then allege a failure to provide 60 days' written notice to each affected employee or their representative and the appropriate governmental unit. 29 U.S.C. § 2102(a).

Here, the Complaint alleges that Defendant "operated the facilities where Plaintiff and the other similarly situated individuals worked or were based at, reported to, and received assignments from," and that Defendant "made the decision to terminate employees, including Plaintiff and those other similarly situated former employees, without 60 days' advance notice, terminating over 200 employees and 33% of the workforce." (Compl. ¶¶ 12, 13.) The Complaint does not, however, allege a mass layoff or plant closing because it does not allege facts that could support a determination that any fifty employees had the same site of employment. It also does not allege facts to support that Plaintiff had the same site of employment as the "similarly situated" former employees. Rather, the Complaint alleges that over 200 terminated employees "worked or were based at, reported to, and received assignments from" the "facilities" operated by Defendant. (Compl. ¶ 12 (emphasis added).) "The general rule is that 'separate facilities are separate sites.'" Lester v. Pay Car Mining, Inc., No. 5:17-CV-00740, 2018 WL 2728033, at *3 (S.D.W. Va. June 6, 2018) (quoting Davis v. Signal Int'l Tex. GP, 729 F.2d 482, 485 (5th Cir. 2013)). Plaintiff does not identify the facilities or allege that these facilities are in close geographic proximity, share the same employees, or have any other connection that would enable this Court to reasonably infer that workers across

7

facilities shared a single site of employment under 20 C.F.R. § 639.3(i). (See Pl.'s Br. [Doc. #10] at 8 (referring to layoffs in "Durham, North Carolina, and potentially other locations too."))

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). "The plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Here, while the termination of over 200 employees is consistent with a potential WARN Act claim, the Complaint lacks enough factual material to state a plausible ground for relief because it does not allege facts that, when taken as true, would establish that a particular facility was the "site of employment" for the requisite number of employees. Plaintiff correctly identifies that "[t]he issue of whether multiple work locations constitute a 'single site of employment' under WARN is a mixed question of law and fact," but Plaintiff has not alleged any work locations, let alone any facts that could establish that other employees had the same site of employment as Plaintiff. (See Pl.'s Br. at 8 (quoting Viator v. Delchamps Inc., 109 F.3d 1124, 1126 (5th Cir. 1997)).)

Defendant suggests construing the Complaint as alleging that Plaintiff worked remotely from his residence in Kentucky. (Def.'s Br. at 11; Reply at 1.) The Court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff" at the Rule 12(b)(6) stage. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Here, where Plaintiff correctly notes that the Complaint does not allege Plaintiff worked remotely (Pl.'s Br. at 2), the Court will not draw that inference, but Plaintiff still has not alleged

8

facts sufficient to show that he had the same site of employment as other employees.² See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). To locate a plausible claim for relief, this Court would need to go beyond inferences and assume facts not presented in the Complaint: that Plaintiff and at least 49 other former employees worked at (and/or were mobile workers who were based at, reported to, or received assignments from) the same facility, same campus, or some other set of locations that can be grouped together under one or more subparts of § 639.3(i). (See Compl. ¶ 12 (alleging Defendant "operated the facilities where Plaintiff and the other similarly situated individuals worked or were based at, reported to, and received assignments from.") (emphasis added).) Whether the Court infers that Plaintiff worked at a RTI facility in Kentucky, where he resides, or in North Carolina at Defendant's headquarters, or at some other location in Durham or elsewhere, or remotely from his residence, the Complaint would need to allege facts connecting Plaintiff's site of employment to a sufficient number of terminated employees.

Likewise, the Complaint's identification of Defendant's principal place of business in Durham does not provide sufficient basis for the Court to infer a single site of employment under the theory that the alleged terminations "constituted at least 50 employees and more

---

² In the briefing, the Parties dispute at length how remote workers should be treated under the WARN Act and the related regulations. Plaintiff asserts that § 639.3(i) subpart (6) "explicitly includes remote workers." (Pl.'s Br. at 12, 14-15.) However, the Court need not resolve those issues at this preliminary stage. As with other employment arrangements, the applicability of subpart (6) to remote workers is a fact-intensive inquiry. See Piron v. Gen. Dynamics Info. Tech., Inc., No. 3:19cv709, 2022 WL 363958 at *9-*13 (E.D. Va. Feb. 7, 2022). The issue here is Plaintiff's failure to identify a single site of employment with supporting allegations under any of the § 639.3(i) alternatives.

than a third of the employes employed <u>by the Durham location</u>." (Pl.'s Br. at 2 (emphasis added).) The Complaint identifies the location of Defendant's "principal office" in Durham, but then also refers to multiple "facilities" without identifying the location of those facilities. (Compl. ¶ 12.) As presented, Plaintiff has not alleged facts supporting that Defendant's principal place of business in Durham would be the "site of employment" for either Plaintiff or any similarly situated workers.

Defendant also contends that Plaintiff failed to allege multiple related employment losses that would allow for a 90-day period instead of the standard 30-day WARN Act period. (Def.'s Br. at 20-21.) The WARN Act definitions of "plant closing" and "mass layoff" both require the employment losses to occur within a 30-day period. 29 U.S.C. § 2101(a)(2), (a)(3)(B). To prevent a loophole for employers who simply divide an employment loss into multiple smaller losses 30 days apart from each other, the Act allows for aggregation as follows:

> [E]mployment losses for 2 or more groups at a single site of employment, <u>each of which is less than the minimum number of employees</u> specified in section 2101(a)(2) or (3) of this title but which <u>in the aggregate</u> exceed that minimum number, and which occur within any <u>90-day period</u> shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

§ 2102(d) (emphasis added). The regulations also reflect that the 90-day period applies when "each [employment loss] separately is not of sufficient size to trigger WARN coverage." 20 C.F.R. § 639.5(a)(1)(ii). "[Section] 2102(d) simply provides extra protection to smaller groups of employees." <u>United Mine Workers of Am. Int'l Union v. Martinka Coal Co.</u>, No. 1:96-CV-156, 1997 WL 854936, at *6 (N.D.W. Va. Dec. 30, 1997) (holding that § 2102(d) did not apply

where "each of the two groups of affected employees . . . exceeded the threshold number specified by § 2101(a)(2)"), aff'd sub nom. United Mine Workers of Am., 202 F.3d 717).

Here, Plaintiff alleges his own termination date of June 3, 2025, though the Complaint also refers to the "June 3, 2025 terminations." (Compl. ¶ 16, 28.) Plaintiff also alleges that Defendant "abruptly terminated at least 200 employees" without specifying when these other terminations occurred. (Compl. ¶ 3.) Plaintiff's class allegations provide that all members of the proposed class "were terminated pursuant to a mass layoff or plant closing . . . within 90 days of June 3, 2025." (Compl. ¶ 20.) Without more facts alleging the termination dates of other employees, it is unclear whether Plaintiff intends to allege the termination of one group of at least 50 employees within a 30-day period, the terminations of multiple groups within a 90-day period that all had fewer than 50 employees, or both as alternative theories. As a matter of law, the 90-day period is only available if each smaller group's employment losses were too small to qualify independently. In addition, Plaintiff has not addressed the separate requirement, discussed above, that these terminated employees must have shared a single site of employment.

Ultimately, while the Complaint states that Defendant ordered a "plant closing and/or mass layoff," these are legal terms, not factual allegations. See Iqbal, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). While Plaintiff contends the Court "need not decide whether Plaintiff fits perfectly into one clause or another" of § 639.3(i) (Pl.'s Br. at 17-18), the Complaint would need to allege facts that would enable the Court to infer that Plaintiff and at least 49 other terminated employees shared

11

a single site of employment, regardless of which subpart(s) of § 639.3(i) would provide the basis for the site-of-employment determination.³ If Plaintiff is able to allege facts that would enable the Court to infer a plausible site of employment for Plaintiff under <u>any</u> subsection of § 639.3(i) and infer that enough other employees, terminated within 30 days unless Plaintiff alleges facts supporting application of the 90-day period, could plausibly have had the same site of employment, the Parties will later be able to make fact-specific arguments after discovery about which subparts of § 639.3(i) fit best and which site-of-employment determination would result.

As such, Plaintiff's claim should be dismissed without prejudice, but Plaintiff may file an Amended Complaint within 14 days of the date of this Order, to include additional factual allegations in light of the issues noted herein. The Court notes that the WARN Act requires Plaintiff to plead not only that he and the other employees were terminated without sufficient notice, but that these terminations were because Defendant ordered a "mass layoff" or "plant closing," either of which requires Plaintiff to sufficiently allege that there are 50 employees at a single site of employment who suffered an employment loss. Further, Plaintiff must either allege that the requisite number of terminations occurred within a 30-day period or allege facts supporting the application of the 90-day period. Finally, the Court notes the possibility that some of the terminated employees from Plaintiff's proposed class could have a proper WARN

---

³ The Court notes that the site-of-employment determination may involve multiple subparts. For example, if thirty warehouse employees worked at a "campus or industrial park" under subpart (1) and another twenty delivery drivers under subpart (6) reported to that same location each workday to pick up packages for delivery, those fifty employees would appear to have the same site of employment and could therefore be aggregated for purposes of a WARN Act claim, though the Court does not opine at this time as to how such a division might impact class certification questions. In contrast, "assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers" under subpart (4).

Act claim even if Plaintiff himself does not. Dismissal of Plaintiff's Complaint without prejudice would not impact the viability of such claims.

B. Motion to Strike

Defendant also moves in the alternative to strike Plaintiff's class allegations. Motions to strike "are to be granted infrequently." Renaissance Greeting Cards, 227 F. App'x at 247. (citing Stanbury Law Firm, 221 F.3d at 1063). "[I]t is normally only appropriate to strike class allegations when a defendant 'demonstrate[s] from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.'" Anderson v. Lab'y Corp. of Am. Holdings, No. 1:17CV193, 2019 WL 3858320, at *9 (M.D.N.C. Aug. 16, 2019) (quoting Whitt v. Seterus, Inc., No. 3:16-2422-MBS, 2017 WL 1020883, at *2 (D.S.C. Mar. 16, 2017)). Some districts in this Circuit have concluded that motions to strike class allegations at this stage of the proceedings are inherently premature. See Anderson, 2019 WL 3858320, at *9 (citing Alig v. Quicken Loans Inc., No. 5:12CV114, 2015 WL 13636655, at *3 (N.D.W. Va. Oct. 15, 2015) and Mungo v. CUNA Mut. Ins. Soc., No. 0:11-464-MBS, 2012 WL 3704924, at *6 (D.S.C. Aug. 24, 2012)).

Here, the deficiencies in Plaintiff's class allegations stem from the same issues discussed above. Defendant contends that Plaintiff's allegations are improper because Plaintiff has failed to allege a "mass layoff" or "plant closing," has failed to allege a single site of employment, and uses 29 U.S.C. § 2101(d)'s 90-day period without a basis for doing so. (Pl.'s Br. at 17-18, 20.) As discussed above, to state a claim Plaintiff must allege that he was one of at least 50 employees who were terminated within the statutory timeframe as a result of a mass layoff or plant closing—either of which would require Plaintiff to allege facts supporting a single-site-

13

of-employment determination for himself and at least forty-nine other employees—even aside from the class allegations. If Plaintiff files an Amended Complaint that alleges facts supporting a mass layoff or plant closing, the Court anticipates that such a filing would at least partially resolve the problems raised by Defendant as to the class allegations.

In addition, the Court can revisit issues regarding the scope of the alleged class at the class certification stage.[4] The Court notes that, because a WARN Act claim inherently requires a common injury shared by fifty or more terminated employees at a single site of employment, "courts within the Fourth Circuit have generally certified Rule 23 WARN class actions." Piron v. Gen. Dynamics Info. Tech., Inc., No. 3:19CV709, 2022 WL 363958, at *12 (E.D. Va. Feb. 7, 2022); see also Applegate v. Formed Fiber Techs., LLC, No. 2:10CV473, 2012 WL 3065542, at *9 (D. Me. July 7, 2012) (certifying a class where "the case involves a common, overarching question—were the plaintiffs subjected to a mass layoff without adequate notice?"). "'If Plaintiff[] cannot prove a single site of employment, the litigation must end, and 'thus will never cause individual question[s] of reliance or anything else to overwhelm questions common to the class.'" Piron, 2022 WL 363958, at *13.

Accordingly, the motion to strike class allegations is moot, but these issues can be appropriately considered if Plaintiff files an Amended Complaint and ultimately files a Motion for Class Certification.

---

[4] Under LR 23.1(b), parties in this District "should specifically address the class action determination as part of the Rule 16 conference and Rule 26(f) report," and motions for class certification are due within 90 days of the initial pretrial order.

IV. <u>Conclusion</u>

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion to Dismiss [Doc. #8] be granted and that the Complaint be dismissed without prejudice, but if Plaintiff files an Amended Complaint within 14 days of the date of this Order, the Motion to Dismiss will instead be rendered moot, and Defendant will then have 30 days to file an Answer or renewed Motion as to any Amended Complaint.

This, the 10th day of March, 2026.

                                                     Joi Elizabeth Peake
                                           United States Magistrate Judge