# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No.: 1:25-cv-00481-LAF-JEP

PHILIP SCHWAB, individually and
on behalf of those similarly situated,

          Plaintiff,

     v.

RESEARCH TRIANGLE INSTITUTE
d/b/a RTI INTERNATIONAL,

          Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................... ii

Nature of the Matter Before the Court.............................................................1

Plaintiff's Allegations .....................................................................................3

Question Presented..........................................................................................5

Legal Standard................................................................................................6

Argument.........................................................................................................7

    A.    Schwab fails to state a WARN Act claim because he does not allege a plant closing or mass layoff at the Facility or any other single site of employment. ..............................................7

        1.    To state a WARN Act claim, Schwab must allege employment losses by him and a sufficient number of other workers at a "single site of employment." ...................7

        2.    Schwab fails to allege employment losses by him and a sufficient number of other workers at a "single site of employment," and thus fails to state a WARN Act claim.. 13

            a.    The amended complaint does not identify Schwab's physical work location or distinguish former employees who physically worked at the Facility from those who worked elsewhere in unidentified locations. ............................................... 13

            b.    Schwab's failure to allege the information described above precludes him from alleging the required WARN Act element of a mass layoff or plant closing at the Facility or any other single site of employment. .............................. 16

                i.    Former employees who physically worked at the Facility................................................... 16

                ii.    Former employees who physically worked at unidentified locations other than the Facility.......................................................... 17

    B.    The Court should dismiss the amended complaint with prejudice. .................................................................................. 25

Conclusion ................................................................................................... 25

Certificate of Compliance ........................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)..................................................................... 6, 24, 25

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007)......................................................................*passim*

*Dargon v. Xtend Healthcare, LLC,*
 No. 3:25-cv-13, 2026 WL 882761 (M.D. Tenn. Mar. 31, 2026) ....... 10, 21, 23

*Francis v. Giacomelli,*
 588 F.3d 186 (4th Cir. 2009)...........................................................6

*Frymire v. Ampex Corp.,*
 61 F.3d 757 (10th Cir. 1995)................................................... 9, 18

*Hubbard v. Goldschmitt & Assocs., LLC,*
 No. 1:25-cv-812, 2026 WL 767685 (E.D. Va. Mar. 18, 2026) .... 10, 21, 23, 24

*Karroll v. Car Toys, Inc.,*
 765 F. Supp. 3d 506 (D.S.C. 2025) ......................................*passim*

*Loney v. State Collection Services, Inc.,*
 No. 7:13-cv-247, 2014 WL 1233244 (E.D.N.C. Mar. 25, 2014) ................... 15

*McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.,*
 780 F.3d 582 (4th Cir. 2015)................................................... 26

*Meson v. GATX Tech. Servs. Corp.,*
 507 F.3d 803 (4th Cir. 2007)...............................................*passim*

*Parks v. Zayo Bandwidth, LLC,*
 No. 13-4425, 2016 WL 538328 (E.D. Pa. Feb. 10, 2016) ............................ 11

*Piron v. Gen. Dynamics Information Tech., Inc.,*
 No. 3:19-cv-709, 2020 WL 1159383 (E.D. Va. Mar. 10, 2020) .............. 10, 21

ii

*Schwab v. Research Triangle Institute*,
No. 1:25-cv-481, 2026 WL 673105 (M.D.N.C. Mar. 10, 2026) ............*passim*

*Sisney v. Trinidad Drilling, LP*,
231 F. Supp. 3d 233 (W.D. Tex. 2017) ....................................................... 23

*In re Storehouse*,
No. 06-11144, 2010 WL 4453849
(Bankr. E.D. Va. Nov. 3, 2010)..................................................................... 21

*Working Films, Inc. v. Working Narratives, Inc.*,
No. 7:20-cv-139, 2021 WL 1196189 (E.D.N.C. Mar. 29, 2021) ................... 24

**Statutes**

29 U.S.C. §§ 2101(a)(2)-(3).................................................................................8

29 U.S.C. § 2102(a) ...........................................................................................7

**Other Authorities**

20 C.F.R. § 639.3(f)(1) .......................................................................................8

20 C.F.R. § 639.3(f)(4) .......................................................................................8

20 C.F.R. § 639.3(i)(3) .................................................................................. 8, 18

20 C.F.R. § 639.3(i)(6) .............................................................................. 2, 9, 19

20 C.F.R. § 639.3(i)(8) ................................................................................. 9, 23

54 Fed. Reg. 16042  (Apr. 20, 1989) ..................................................... 9, 21, 22

<u>**Nature of the Matter Before the Court**</u>

When the Court recommended dismissing Plaintiff Philip Schwab's original complaint without prejudice, it explained what he must do to state a WARN Act claim: "allege that there are 50 employees at a single site of employment who suffered an employment loss," which requires alleging "facts that would enable the Court to infer that Plaintiff and at least 49 other terminated employees shared a single site of employment." *Schwab v. Research Triangle Institute*, No. 1:25-cv-481, 2026 WL 673105, at \*5-6 (M.D.N.C. Mar. 10, 2026).

In his amended complaint, Schwab fails to heed the Court's instruction. He now alleges that RTI's Durham headquarters—which he calls the "Facility"—is the relevant single site of employment. He pleads, however, insufficient facts to support that legal conclusion.

Remarkably, Schwab *still* does not allege the location where he physically worked. Instead, his allegations describe—and fail to differentiate—former employees who physically worked at the Facility from those who physically worked elsewhere in unspecified locations.

His allegations about former employees who physically worked at the Facility fail to state a claim because he never alleges *how many* of these workers had their employment terminated, and therefore does not allege a

1

mass layoff or plant closing as to these workers.

His allegations about former employees who did *not* physically work in the Facility are likewise insufficient, because they contain no facts that would plausibly make the Facility their single site of employment. The only potential basis to do so is under the mobile worker regulation, 20 C.F.R. § 639.3(i)(6). As this Court recognized, however, that regulation "applies 'only to truly mobile workers without a regular, fixed place of work.'" *Schwab*, 2026 WL 673105, at *3 (quoting *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 809 (4th Cir. 2007)). Schwab, though, alleges *no* information about the work locations of employees who did not physically work at the Facility. Much less does he allege that any or all of them (including Schwab himself) lacked a "regular, fixed place of work" or traveled for their employment, as required to fall under the regulation.

Schwab's amended allegations therefore are legally deficient. He fails to allege: (i) where he worked; (ii) an employment termination of sufficient size as to employees who physically worked at the Facility; or (iii) facts showing that the Facility is the single site of employment of employees who did not physically work there.

The Court should dismiss this complaint with prejudice. Whether by choice or inability, Schwab has not alleged facts necessary to state a WARN

Act claim. No reason exists to give Schwab a third bite at the apple.

**Plaintiff's Allegations**

Defendant Research Triangle Institute ("RTI") is an international non-profit corporation headquartered at 3040 East Cornwallis Road in Durham, North Carolina. (Am. Compl. ¶¶ 2, 12.) RTI provides research, consulting, and analytical work to contractors, manufacturers, and government entities. (*Id.* ¶ 27.) Schwab, a Kentucky resident, worked for RTI for approximately three years in RTI's Health Solutions Group. (*Id.* ¶¶ 10, 14, 18.)

On May 20, 2025, RTI informed Schwab that, due to "departmental restructuring and budgetary constraints," his position and others at RTI were being terminated. (*Id.* ¶¶ 18, 20.) RTI terminated Schwab's employment on June 3, 2025. (*Id.* ¶ 21.) Schwab alleges that he was one of "at least 200 employees" whose employment was terminated that day, (*id.* ¶ 3), and that RTI terminated the employment of more than 500 employees "in different groups within ninety days of May 20, 2025," (*id.* ¶ 33). (*See also id.* ¶ 47 (alleging that "[t]he May 20, 2025, terminations resulted in 'employment losses' . . . for at least 33 percent of the employees and at least 50 employees at the Facility").)

Schwab carefully avoids identifying his physical work location. He alleges that he was "employed . . . at" and terminated "from" RTI's Durham

3

headquarters, (*id.* ¶¶ 3, 10, 13), and says that he "took direction and was supervised from the RTI headquarters," (*id.* ¶¶ 14, 17, 25, 30, 35), which he calls the "Facility," (*id.* ¶ 2). Schwab never, however, identifies his physical work location and never alleges that he physically worked at the Facility. Nor does he allege if his physical work location (wherever it was) was fixed or whether his job responsibilities involved travel.

Likewise, Schwab does not identify the physical work locations of the other individuals whose employment RTI terminated. Instead, Schwab vaguely alleges that these employees "worked at *or* received assignments from the company's headquarters in Durham." (*Id.* ¶ 30 (emphasis added); *see also id.* ¶ 12 (alleging that the terminated employees "worked *or* were based at, reported to, and received assignments from" the Facility (emphasis added)).) Schwab alleges that all of the former employees "received direction and supervision of their work from" the Facility, (*id.* ¶¶ 14, 17, 25, 35), but never specifies where these employees physically worked—whether at a branch RTI office, a home office, or elsewhere. Nor does he allege if those locations were fixed or if their employment necessitated travel. In fact, the only information Schwab provides about the nature of his and the other former employees' employment is that—upon information and belief—all of them "were employed in similar capacities of providing research services to

4

RTI clients." (*Id*. ¶ 28.)

Although he fails to identify his and others' physical work locations, Schwab acknowledges that an unspecified number of former employees did *not* physically work at the Facility. Schwab alleges that some former employees worked "remotely for RTI" in "physical locations other than Durham, North Carolina." (*Id*. ¶ 26.) The amended complaint does not identify the number of those employees, the physical locations where they worked (including whether a branch office or home office), whether those physical locations were fixed, whether their work involved travel, or whether Schwab was among these individuals.

Schwab alleges that he and the other former employees were entitled to 60 days' advance written notice of their employment terminations under the WARN Act and that RTI failed to provide it. (*Id*. ¶¶ 36-38.) Schwab asserts his WARN Act claim on behalf of himself and a putative class of employees "who were terminated from the Facility pursuant to a mass layoff or plant closing . . . within 90 days of May 20, 2025." (*Id*. ¶ 39.)

## Question Presented

Whether the amended complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) because it does not allege a

plant closing or mass layoff at Schwab's "single site of employment," as required to state a WARN Act claim.

## Legal Standard

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "merely consistent with" liability are insufficient to state a claim because that "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Such deficient pleadings do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

Schwab's amended complaint fails to meet this standard. It parrots statutory and regulatory language, lacks necessary factual allegations, and does not "permit the court to infer more than the mere possibility of misconduct." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also Schwab*, 2026 WL 673105, at *5 (recommending dismissal of complaint because plaintiff did not allege facts allowing inference of a legal violation).

6

<u>Argument</u>

**A. Schwab fails to state a WARN Act claim because he does not allege a plant closing or mass layoff at the Facility or any other single site of employment.**

Schwab alleges that RTI triggered the WARN Act by causing a plant closing or mass layoff at a single site of employment—the Facility. (Am. Compl. ¶ 4.) As with his initial complaint, however, Schwab alleges no facts sufficient to show the Facility is the single site of employment for him and a statutorily sufficient number of other workers whose employment RTI terminated. As a result, Schwab's claim fails as a matter of law.

**1. To state a WARN Act claim, Schwab must allege employment losses by him and a sufficient number of other workers at a "single site of employment."**

"The WARN Act requires employers ordering a 'plant closing or mass layoff' to first provide 60 days' written notice to affected employees or their representatives and to the state and local governments where layoffs will occur." *Schwab*, 2026 WL 673105, at *2 (quoting 29 U.S.C. § 2102(a)).

To allege the necessary element of a "plant closing" or "mass layoff," a plaintiff must allege employment losses by the plaintiff and a sufficient number of other full-time employees at a "single site of employment." *Id*. at *2. As this Court explained, "[f]or either a mass layoff or a plant closing, 'a plaintiff must demonstrate that there are 50 employees, not including part-

7

time employees, at a single site of employment, who suffered an employment loss.'" *Id.* (quoting *Karroll v. Car Toys, Inc.*, 765 F. Supp. 3d 506, 513 (D.S.C. 2025)); *see also id.* at *3 (explaining "a WARN Act claim requires a plaintiff to allege a mass layoff or plant closing," which requires allegations of "a loss of a sufficient number of full-time employees at a single site of employment"). The requirement to allege a "single site of employment" derives from the statutory definitions of "plant closing" and "mass layoff," both of which define employment losses in reference to a "single site of employment." *See id.* at *2 (quoting 29 U.S.C. §§ 2101(a)(2)-(3)).

"The WARN Act itself does not define 'single site of employment.'" *Id.* at *2 (quoting *Meson*, 507 F.3d at 808). However, "[a]ccording to regulations promulgated by the Secretary of Labor, a single site of employment can be 'either a single location or a group of contiguous locations.'" *Id.* (quoting 20 C.F.R. § 639.3(f)(1)). "'Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment.'" *Id.* (quoting 20 C.F.R. § 639.3(i)(3)). However, "'[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.'" *Id.* (quoting 20 C.F.R. § 639.3(f)(4)). Thus,

8

geographic "proximity and contiguity are the most important criteria" for assessing the existence of a single site of employment. *Frymire v. Ampex Corp.*, 61 F.3d 757, 766 (10th Cir. 1995); *see also* Commentary to WARN Act, 54 Fed. Reg. 16042, 16049 (Apr. 20, 1989) ("As a general rule, a geographic connection or proximity is required to define 'single site of employment.'").

In its Opinion and Recommendation, the Court further observed that "[t]he regulations also account for traveling workers and for some employment arrangements that may be difficult to categorize:

> (6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.
> . . .
>
> (8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable."

*Schwab*, 2026 WL 673105, at *2-3 (quoting 20 C.F.R. § 639.3(i)(6), (8)).

In this brief, we refer to Section 639.3(i)(6) as "subpart (6)." As this Court recognized, the Fourth Circuit has held that subpart (6) applies *only* to workers who *lack* a fixed work location: "The Court of Appeals for the Fourth Circuit has held that subpart (6) above applies 'only to truly mobile workers

9

without a regular, fixed place of work,' interpreting the example of 'salespersons' to refer specifically to 'traveling salespersons who work primarily out of their homes or cars, rather than those who work out of fixed offices.'" *Id.* at *3 (quoting *Meson*, 507 F.3d at 809).

Because a WARN Act claim requires alleging sufficient employment losses at a "single site of employment," the failure to allege these facts defeats the claim. This Court recommended dismissal of Schwab's original complaint for that reason. *Id.* at *4.

Other courts within the Fourth Circuit and elsewhere similarly dismiss WARN Act claims at the pleading stage when the complaint fails to allege a single site of employment. *See, e.g., Car Toys*, 765 F. Supp. 3d at 516-18 (dismissing action because WARN Act complaint failed to allege single site of employment); *Hubbard v. Goldschmitt & Assocs., LLC*, No. 1:25-cv-812, 2026 WL 767685, at *4 (E.D. Va. Mar. 18, 2026) (dismissing complaint because plaintiff "ha[d] not plausibly alleged that any employees terminated on May 1, 2025 – let alone the 50 required by the WARN Act – were terminated from a single site of employment").[1]

---

[1] *Accord Dargon v. Xtend Healthcare, LLC*, No. 3:25-cv-13, 2026 WL 882761, at *14 (M.D. Tenn. Mar. 31, 2026) (dismissing complaint because plaintiff did not plausibly allege that she and other former workers "worked at a 'single site of employment'"); *Piron v. Gen. Dynamics Information Tech., Inc.*, No. 3:19-cv-709, 2020 WL 1159383, at *4 (E.D. Va. Mar. 10, 2020) (holding that

In *Car Toys*, for example, a company that owned and operated hundreds of cell phone kiosks terminated approximately 1,800 kiosk workers, including the plaintiff, without providing any notice. 765 F. Supp. 3d at 511. In addition to the kiosk workers, the company terminated all employees who worked at its headquarters. *Id.* at 511-12. After his employment termination, the plaintiff asserted a WARN Act claim in South Carolina federal court on behalf of himself and other kiosk workers. *Id.* at 512. The company moved to dismiss the claim, arguing that the plaintiff was not entitled to WARN Act notice because he did not allege working at a single site of employment that experienced a mass layoff. *Id.* at 513.

The court granted the company's motion to dismiss. In doing so, it rejected all three of the plaintiff's arguments about his claimed single site of employment. *Id.* at 516-22. First, the court rejected plaintiff's argument that the kiosks in his region—which individually did not employ enough people to reach the WARN Act's numerical thresholds—could be aggregated and considered together as one single site of employment because the complaint failed to allege that the kiosks were in sufficiently close geographic proximity

---

"the Amended Complaint fails to adequately or plausibly allege an element of the asserted WARN Act claim: the single site of employment element"); *Parks v. Zayo Bandwidth, LLC*, No. 13-4425, 2016 WL 538328, at *4 (E.D. Pa. Feb. 10, 2016) (dismissing complaint when the plaintiff "failed to allege an employment loss of at least fifty employees at a single site of employment").

to one another to be considered a single site. *Id.* at 516-17. Second, the court rejected plaintiff's argument that the company was structured as a "truly unusual organizational situation." *Id.* at 519. Finally, plaintiff argued that his single site of employment was the company's headquarters based on subpart (6), but, following *Meson*, the court held that the regulation was inapplicable because the complaint did not contain allegations showing that the plaintiff was a "truly mobile worker without a regular, fixed place of work" such that the regulation would apply. *Id.* at 522 (quoting *Meson*, 507 F.3d at 809). Because the complaint failed to identify any single site of employment at which the plaintiff worked that experienced a mass layoff, the court dismissed the WARN Act claim. *Id.* at 523.

In sum, to state a WARN Act claim, a plaintiff must allege facts plausibly supporting that the defendant conducted a plant closing or mass layoff, which in turn requires alleging employment losses by the plaintiff and a sufficient number of other employees at a single site of employment. As explained below, Schwab fails to allege such facts, which defeats his claim.

12

**2. Schwab fails to allege employment losses by him and a sufficient number of other workers at a "single site of employment," and thus fails to state a WARN Act claim.**

    **a. The amended complaint does not identify Schwab's physical work location or distinguish former employees who physically worked at the Facility from those who worked elsewhere in unidentified locations.**

Schwab's original complaint alleged "that over 200 terminated employees 'worked or were based at, reported to, and received assignments from' the '*facilities*' operated by Defendant," but did not identify the location of those facilities or the location where Schwab worked. *Schwab*, 2026 WL 673105, at *3 (quoting ECF No. 1 (Compl.) ¶ 12) (emphasis added).) As a result, the original complaint failed to "allege a mass layoff or plant closing because it [did] not allege facts that could support a determination that any fifty employees had the same site of employment." *Id.* Likewise, the original complaint "also [did] not allege facts to support that Plaintiff had the same site of employment as the 'similarly situated' former employees." *Id.*

Schwab's amended complaint does not cure these defects. He repeats the allegation quoted above, but instead of referring to "facilities," he now refers to the "Facility": "Defendant . . . operated the Facility where Plaintiff and the other similarly situated individuals *worked or were based at, reported to, and received assignments from.*" (Am. Compl. ¶ 12 (emphasis added); *see*

*also id.* ¶ 30 (alleging that "Plaintiff and at least 49 other former employees who were terminated within 30 days of May 20, 2025 *worked at or received assignments from the company's headquarters in Durham, North Carolina*" (emphasis added); *id.* ¶¶ 17, 25, 35 (similar allegations).)

In addition—and after complaining that RTI's motion to dismiss Schwab's original complaint inappropriately inferred allegations of remote employment—Schwab now expressly alleges that his claim encompasses an unspecified number of remote employees who did not work at the Facility:

> All employees working *remotely* for RTI (who *worked in physical locations other than Durham, North Carolina*) took direction from managers in Durham, North Carolina at RTI's headquarters (the Facility). Their work was assigned from the Facility in Durham and they reported to personnel at the Facility in Durham.

(*Id.* ¶ 26 (emphasis added).)

Schwab's allegations thus describe two different groups of former employees. The first are those who "worked at" the Facility. (*Id.* ¶ 30; *see also id.* ¶ 12.) We assume for purposes of this motion—and in Schwab's favor— that these individuals *physically* worked at the Facility.

But the second group did not. This group includes former employees "working remotely" who "worked in physical locations other than Durham, North Carolina." (*Id.* ¶ 26.) As to these individuals, Schwab does not allege their physical work locations. He does not allege if those locations are

14

elsewhere in North Carolina, in another state, or even outside of the United States, or whether they are a branch RTI office, a home office, or someplace else. Nor does he allege if those locations were fixed for each former employee or whether the former employees traveled as part of their jobs.

The same is true of former employees who "were based at, reported to, and received assignments from" the Facility. (*Id.* ¶ 12.) Schwab alleges none of the information described above as to these former employees, including the number of them and the extent (if any) to which they overlap with the "remote" employees he describes.

Schwab also fails to allege this information about himself. He does not allege if he is among the group of former employees who physically worked at the Facility, or instead is among the group that worked in other, unspecified physical locations. Nor does he allege if his physical work location was fixed or if he traveled for his job. *See Twombly*, 550 U.S. at 555 (holding that "plaintiff's obligation to provide the grounds of [their] entitlement to relief, requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *see also Loney v. State Collection Services, Inc.*, No. 7:13-cv-247, 2014 WL 1233244, *2 (E.D.N.C. Mar. 25, 2014) (dismissing complaint after describing its lack of factual detail and reliance on "vague factual allegations," "legal conclusions," and "paraphrased

15

statutory text").

**b.** **Schwab's failure to allege the information described above precludes him from alleging the required WARN Act element of a mass layoff or plant closing at the Facility or any other single site of employment.**

Schwab's refusal to allege where he physically worked, and his undifferentiated allegations about former employees who physically worked at the Facility and those who worked elsewhere at unspecified locations, precludes him from alleging a mass layoff or plant closing at the Facility or any other single site of employment. We address his allegations in turn.

**i.** **Former employees who physically worked at the Facility.**

Even assuming the Facility was a single site of employment for this group of workers, Schwab's allegations are insufficient to establish a mass layoff or plant closing at the Facility as to these workers. He fails for two reasons.

*First*, Schwab does not allege that RTI terminated the employment of a statutorily sufficient number of these workers. That is because Schwab's allegations about the size of the employment losses do not distinguish between (1) individuals who physically worked at the Facility and (2) individuals who physically worked elsewhere. Instead, Schwab lumps these former employees together when describing the size of the employment

16

losses. (*See, e.g.*, Am. Compl. ¶¶ 3, 13, 24, 30, 32, 34, 36, 47.) He never alleges the number of employment losses of individuals who physically worked at the Facility—whether it was one individual, 49, or 50 or more. The Court can only speculate whether this number meets the statutory threshold. For this reason, Schwab's allegations about former employees who physically worked at the Facility are insufficient, by themselves, to establish a plant closing or mass layoff at the Facility.

*Second*, and regardless, Schwab never alleges that *he* was among the employees who physically worked at the Facility. As a result, even if he had alleged employment losses by a sufficient number of such individuals, his allegations about these individuals still fail to state a WARN Act claim. *See Schwab*, 2026 WL 673105, at *4 (explaining that to state a claim, a plaintiff must "allege facts connecting Plaintiff's site of employment to a sufficient number of terminated employees"); *see also Twombly*, 550 U.S. at 557 ("naked assertions" of wrongdoing necessitate "factual enhancement … to cross the line between possibility and plausibility").

### ii.     Former employees who physically worked at unidentified locations other than the Facility.

Because Schwab's allegations about former employees who physically worked at the Facility are insufficient standing alone, he must rely on his remaining allegations about former employees who did *not* physically work at

17

the Facility, but instead "were based at, reported to, and received assignments from" the Facility (Am. Compl. ¶ 12) and/or who worked "remotely" (*id.* ¶ 26). These allegations, however, are likewise insufficient. As explained below, the allegations do not come within any of the Department of Labor's definitional categories for a single site of employment.

**Geographic proximity.** Schwab makes no allegations that would allow the Court to infer, based on geographic proximity, that the Facility is the single site of employment of individuals who did *not* physically work there. Schwab never alleges where these individuals worked and thus does not allege that their work locations are geographically close to the Facility or to one another. To the contrary, he concedes that remote employees (including potentially himself) worked in unspecified places outside of Durham, the Facility's location. It is pure guesswork where these individuals worked—whether elsewhere in North Carolina or outside of the state or country—and whether each individual had the same or a different work location. Schwab therefore alleges no facts sufficient to show, based on geographic proximity, that the Facility or any other location was the single site of employment for former employees who did not physically work there. *See Frymire*, 61 F.3d at 766 (geographic "proximity and contiguity are the most important criteria" for assessing existence of a single site of

18

employment); *Schwab*, 2026 WL 673105, at *2 (discussing § 639.3(i)(3), which requires that "[s]eparate buildings or areas which are not directly connected or in immediate proximity" be "in reasonable geographic proximity," among other requirements, to "be considered a single site of employment").

**Subpart (6).** Schwab purports to invoke subpart (6) to conclude that the Facility is the single site of employment of former employees who did not physically work there. He does so by parroting the language of subpart (6) when describing this group of former employees. *Compare* 20 C.F.R. § 639.3(i)(6) (referring to "the single site of employment to which [workers] are assigned as their home base, from which their work is assigned, or to which they report") *with* Am. Compl. ¶ 12 (describing former employees who "were based at, reported to, and received assignments from" the Facility) *and id.* ¶ 26 (describing remote workers who "took direction from managers" at the Facility, whose "work was assigned from the Facility," and who "reported to personnel at the Facility"). *See Twombly*, 550 U.S. at 557 (stating need for "factual enhancement," not just mimicking legal standard).

The Fourth Circuit's precedential decision in *Meson* forecloses Schwab's attempted reliance on subpart (6). There, as this Court observed, the Fourth Circuit "held that subpart (6) . . . applies 'only to truly mobile workers without a regular, fixed place of work,' interpreting the example of

19

'salespersons' to refer specifically to 'traveling salespersons who work primarily out of their homes or cars, rather than those who work out of fixed offices.'" *Schwab*, 2026 WL 673105, at *3 (quoting *Meson*, 507 F.3d at 809).

In *Meson*, a regional sales manager who worked at a small satellite office in Falls Church, Virginia asserted a WARN Act claim against her employer—a Tampa-based leasing company—after her employment termination. 507 F.3d at 804. Although the manager worked at an office of fewer than fifty people, she regularly traveled for work and reported to a supervisor at the Tampa headquarters. *Id*. Based on her travel and reporting structure, the manager claimed entitlement to WARN Act notice and that, under subpart (6), her single site of employment was the Tampa headquarters. *Id*. at 808. The district court held the manager's single site of employment was the Falls Church office and thus the manager was not entitled to the WARN Act's protections because that office had fewer than fifty employees and was not geographically close to Tampa. *Id*. at 806-07.

On appeal, the Fourth Circuit affirmed. *Id*. at 809-10. It held that subpart (6) applies "only to truly mobile workers without a regular, fixed place of work." *Id*. at 809. Because the manager had a fixed place of work in Falls Church, that office was her single site of employment under the WARN Act. *Id*. at 811. And because that office had only three employees, it "did not

have the requisite number of affected employees to trigger application of the WARN Act." *Id.*

Courts apply *Meson* to limit subpart (6)'s application to circumstances when former workers are truly mobile and have no fixed work location. *See Car Toys*, 765 F. Supp. 3d at 521-22 (rejecting application of subpart (6) when plaintiff alleged he worked as retail employee at kiosks); *Hubbard*, 2026 WL 767685, at *3-4 (rejecting application of subpart (6) when plaintiff alleged that he and other terminated employees worked from home); *Piron*, 2020 WL 1159383, at *4 (holding that allegation that plaintiffs "worked remotely" did not plausibly invoke subpart (6)); *In re Storehouse*, No. 06-11144, 2010 WL 4453849, at *3-4 (Bankr. E.D. Va. Nov. 3, 2010) (rejecting application of subpart (6) when employee worked from home and from a small office in the back of a retail store); *Dargon*, 2026 WL 882761, at *10-14 (finding *Meson* persuasive and holding that subpart (6) does not apply to remote employees who have fixed work locations).

*Meson* and its progeny are consistent with the Department of Labor's commentary to its WARN Act regulations. That commentary explains that subpart (6) was included in the definition of "single site of employment" to address railroad industry maintenance crews who have no home base, and "the situation of outstationed workers and traveling workers who report to

21

but do not work out of a particular office."  Commentary to WARN Act, 54 Fed. Reg. 16042, 16051 (Apr. 20, 1989). The commentary also refers to subpart (6) as "that part of the regulation relating to *mobile workers*." *Id*. (emphasis added).

In short, to rely on subpart (6) to establish the Facility as the single site of employment for former employees who did not physically work there, Schwab must allege facts showing that these employees were "truly mobile workers without a regular, fixed place of work." *Meson*, 507 F.3d at 809; *see also Schwab*, 2026 WL 673105, at *3. Schwab, however, alleges no such facts. The amended complaint contains *no allegations* about work locations of *any* former employees who did not work at the Facility. Much less does it provide any factual enhancement that any or all of these employees lacked "a regular, fixed place of work" or were "truly mobile" (or, for that matter, traveled *at all*).

Under *Meson*, failure to allege these facts precludes any argument that subpart (6) makes the Facility the single site of employment for these former workers who did not physically work there. *See also Car Toys*, 765 F. Supp. 3d at 521-22 (applying *Meson* to hold that employees who worked at various kiosks, and thus had a fixed place of employment, could not invoke subpart (6) to argue that the company headquarters was their single site of

22

employment).[2]

**Other bases for finding a single site of employment.** Finally, in its Opinion and Recommendation, the Court noted the DOL regulation stating that the term "single site of employment" may also apply to "truly unusual organizational situations." *Schwab*, 2026 WL 673105, at *3 (quoting 20 C.F.R. § 639.3(i)(8)). This regulation "is more accurately a safety valve to allow courts to aggregate workplaces into single sites of employment if an employer has designed their organizational structure to evade the WARN Act." *Sisney v. Trinidad Drilling, LP*, 231 F. Supp. 3d 233, 243 (W.D. Tex. 2017). Schwab alleges no facts that could support the application of this regulation here. *See Car Toys*, 765 F. Supp. 3d at 520-21 (holding that

---

[2] In its motion to dismiss Schwab's original complaint, RTI demonstrated why remote workers are outside the WARN Act's scope. (*See* ECF No. 9 at 11-17.) This Court acknowledged the issue in its Opinion and Recommendation but did not decide it because doing so was unnecessary to conclude that Schwab's allegations were legally insufficient. Here, likewise, the Court does not need to address whether and to what extent the WARN Act applies to "remote employees" in the abstract. Instead, as explained above, it is sufficient under *Meson* to observe that Schwab does not allege if any or all of the employees who did not physically work at the Facility had or lacked a fixed work location, including branch RTI offices, home offices, or elsewhere. Further, Schwab does not allege whether he is among the remote employees described in his amended complaint, which also makes it unnecessary to decide the question of how the WARN Act applies to remote employees. That said, under *Meson*, the WARN Act does not apply to remote employees. Indeed, since this Court issued its Opinion and Recommendation, two more district courts have reached this conclusion by applying *Meson*. *See Hubbard*, 2026 WL 767685, at *3-4; *Dargon*, 2026 WL 882761, at *13-14.

23

plaintiff failed to invoke "truly unusual organizational situations" regulation when he "fail[ed] to allege that [defendant] is structured in such a way so as to evade notice under the WARN Act").

Finally, Schwab characterizes RTI's alleged employment terminations as a "mass layoff or plant closing," (Am. Compl. ¶ 4), and says that the Facility "was the site of Plaintiff's and other putative class members' employment," (*id.* ¶ 2). These statements, however, are bare legal conclusions and do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Hubbard*, 2026 WL 767685, at *2 n. 2 (stating that "the Court is not required to accept as true at this stage of the litigation Plaintiff's allegations regarding what qualifies as his single site of employment"); *Working Films, Inc. v. Working Narratives, Inc.*, No. 7:20-cv-139, 2021 WL 1196189, at *3 & *12 (E.D.N.C. Mar. 29, 2021) (focusing on complaint being "silent" on key facts and stating that "[a] speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge.").

Rather, Schwab must allege sufficient *facts* showing that RTI terminated at least the minimum statutory number of employees (including himself) at a single site of employment. *See Car Toys*, 765 F. Supp. 3d at 516-

24

18. The amended complaint fails to allege such facts and thus fails to state a WARN Act claim.

*   *   *

For all of these reasons, Schwab fails to allege that RTI conducted a plant closing or mass layoff at the Facility or at any other single site of employment, as required to state a WARN Act claim.

## B. The Court should dismiss the amended complaint with prejudice.

Schwab has failed to heed the Court's instructions for what facts he must allege to state a WARN Act claim. He chooses not to disclose his work's physical location or the work locations of any other former employees who did not physically work at the Facility. Although Schwab is the master of his complaint, choices have consequences. By not alleging the above information, nor whether any employee who did not physically work at the Facility had a fixed work location or travelled as part of his or her responsibilities, Schwab again has failed to state a WARN Act claim.

Already having instructed Schwab on the necessary allegations to state a claim, the Court need not allow Schwab to amend his complaint yet again.

### Conclusion

"[T]he Supreme Court has, with *Iqbal* and *Twombly*, rejected the sufficiency of complaints that merely allege the possibility of entitlement to

25

relief." *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 587 (4th Cir. 2015). To state a claim, a plaintiff must allege factual allegations plausibly establishing a right to relief, without relying on speculation. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Schwab's allegations flunk this standard. Based on his allegations, one could speculate that it is *possible* a mass layoff occurred at a single site of employment, and one could speculate that it is *possible* Schwab or certain other employees *may* meet subpart (6)'s parameters. Speculation and possibility, however, are insufficient to state a claim. Schwab's minimal factual allegations fail to plausibly establish that RTI conducted a plant closing or mass layoff at a single site of employment—whether the Facility or elsewhere—as is required to state a WARN Act claim. Therefore, the Court should dismiss the amended complaint with prejudice under Rule 12(b)(6).

26

This 23rd day of April, 2026.

/s/ Mark A. Hiller

Mark A. Hiller
N.C. Bar No. 50004
mhiller@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
1450 Raleigh Road, Suite 100
Chapel Hill, North Carolina 27517
Phone: 919.328.8800

Julian H. Wright, Jr.
N.C. Bar No. 19345
jwright@rbh.com

Brendan P. Biffany
N.C. Bar No. 54761
bbiffany@rbh.com

ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Phone: 704.377.2536

*Attorneys for Defendant*

27

## Certificate of Compliance

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words (not counting the portions of the brief excluded by Local Rule 7.3(d)(1)) as reported by the word-processing software.

This 23rd day of April, 2026.

/s/ Mark A. Hiller
Mark A. Hiller