# <u>Exhibit 5</u>

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**No. 1:25-cv-481**

PHILIP SCHWAB, individually and on behalf of those similarly situated,

Plaintiff,

v.

RESEARCH TRIANGLE INSTITUTE d/b/a RTI INTERNATIONAL,

Defendant.

## SETTLEMENT AGREEMENT

This agreement (the "Settlement Agreement") between Plaintiff Philip Schwab ("Plaintiff" or "Schwab"), on his own behalf and on behalf of the proposed Settlement Class, and Defendant Research Triangle Institute ("Defendant" or "RTI" and, together with Plaintiff, the "Parties") sets forth the terms of the Parties' settlement of the above-captioned lawsuit (the "Action"). The Parties intend this Settlement Agreement to resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions of this Settlement Agreement, and it remains subject to the Court's approval.

## RECITALS

A. In 2025, Defendant notified certain employees that their employment would be terminated. Plaintiff Philip Schwab was notified on May 20, 2025 that his employment would terminate on June 3, 2025.

B. On June 17, 2025, Plaintiff filed this Action, alleging that Defendant violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109 (the "WARN Act") in its terminations of employees' employment on June 3, 2025 and within 90 days of June 3, 2025.

C. The Complaint seeks damages and civil penalties to the fullest extent allowed by the WARN Act on Plaintiff's behalf and on behalf of a putative class of all other employees whom Defendant laid off or terminated within 90 days of June 3, 2025, as well as reasonable attorneys' fees, as authorized by the WARN Act.

D. Defendant filed a Motion to Dismiss on August 4, 2025. The Court issued an Opinion and Recommendation on that motion on March 10, 2026. Plaintiff filed an Amended Complaint on March 24, 2026, and Defendant filed a second Motion to Dismiss on April 23, 2026.

E. The Parties have undertaken extensive discovery, including written interrogatories, requests for production of documents, exchanging documents, and initial disclosures.

F. The Parties' Counsel have extensively investigated the facts relating to the claims and defenses alleged and the underlying events in the Action, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Action, and have conducted a thorough assessment of the strengths and weaknesses of their respective claims and defenses.

G. If the Action were litigated to judgment, Plaintiff would seek to prove that Defendant violated the WARN Act by failing to provide certain employees, including Plaintiff, at least 60 days' notice of their employment terminations as required by the WARN Act. Plaintiff would further seek to prove that he and the putative class he seeks to represent are entitled to damages to the fullest extent allowed by the WARN Act. Plaintiff would further seek to prove that the Action may be maintained as a class action on behalf of all other employees whose employment was terminated within 90 days of June 3, 2025. Plaintiff would further seek to recover reasonable attorneys' fees for Plaintiff's Counsel, as authorized by the WARN Act.

H. If the Action were litigated to judgment, Defendant would seek to establish that it did not violate the WARN Act. Defendant's defenses include, but are not limited to, that (1) Plaintiff and other members of the putative class cannot show that they were part of a mass layoff

at the alleged single site of employment or any other single site of employment, (2) the unforeseeable business circumstances exception applies to many of the layoffs over the alleged period because  of sudden and unforeseeable federal funding reductions and eliminations, and (3) Plaintiff and the putative class members cannot invoke the 90-day aggregation rule to be included in a mass layoff because the employment losses were the result of separate and distinct actions and causes. Alternatively, Defendant would assert that Defendant's acts or omissions constituting the alleged violation were undertaken in good faith and Defendant had reasonable grounds for believing the acts or omissions were not a violation of the WARN Act such that Defendant would be entitled to a reduction of the liability otherwise provided for under the WARN Act. Defendant would also assert that Plaintiff's claim may not be maintained as a class action.

I. Absent settlement, certain issues of fact and law presented by the Action could require further expense, inconvenience, and burdensome litigation to resolve, and the Parties consider it desirable to resolve the Action on the terms stated herein in order to avoid such further expense, inconvenience, and burden.

J. Defendant denies any and all liability or wrongdoing of any kind associated with the claim alleged in the Action. Defendant specifically denies that it violated the WARN Act or has any liability to Plaintiff or other members of the putative class he seeks to represent in the Action.

K. The Parties' Counsel have engaged in extensive, arm's-length settlement negotiations of the claim asserted in the Action.

L. Because of the factual and legal uncertainties surrounding Plaintiff's claim and Defendant's defenses and both Parties' desire to avoid the costs and risks of continued litigation, the Parties have agreed to settle the Action on terms which are, in the opinion of Plaintiff's Counsel, in the best interest of the Settlement Class.

M. Plaintiff's Motion for a Preliminary Approval Order will include a request for the Court to certify the Settlement Class for purposes of effectuating this Settlement Agreement only, comporting with the definition agreed upon by the Parties and mirroring the definition set forth below. This Settlement Agreement is expressly conditioned upon, and subject to, preliminary and final approval by the Court and entry of final judgment, as set forth herein. Absent such approvals, this Settlement Agreement shall be null, void, and of no further force or effect and the Parties shall be returned to their status quo ante.

N. Defendant has agreed to pay the total amount of One Hundred Fifty Thousand Dollars ($150,000.00) to fund the settlement, which shall be used: (1) to pay Settlement Class Members; (2) to pay Attorneys' Fees and Costs as awarded by the Court, if any; (3) to pay the Service Award to Plaintiff as awarded by the Court, if any; and (4) to pay the Settlement Administrator's Expenses.

NOW, THEREFORE, it is hereby agreed that, in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, and subject to the terms and conditions set forth herein and the approval of the Court, the Action shall be fully and finally settled and dismissed with prejudice on a class-wide basis:

**AGREEMENT**

1. Definitions.

   a. "Complaint" means the operative and amended complaint in the Action, filed on March 24, 2026, and docketed at ECF No. 18.

   b. "Court" means the United States District Court for the Middle District of North Carolina.

   c. "Defendant's Counsel" means Mark A. Hiller, Julian H. Wright, Jr., and Brendan P. Biffany of Robinson, Bradshaw & Hinson, P.A.

d. "Effective Date" means the later of (a) the date on which the Court enters an order finally approving the settlement embodied in this Settlement Agreement (the "Final Approval Order"), if no objections are timely filed; or (b) if objections are timely filed, the date when no further appellate review of the Final Approval Order is available to any objector, whether by reason of final dismissal of appellate proceedings, final affirmance of the Final Approval Order, or expiration of the time within which appellate review may be sought.

e. "Parties' Counsel" means Defendant's Counsel and Plaintiff's Counsel.

f. "Plaintiff's Counsel" means J. Gerard Stranch, IV and Michael Tackeff of Stranch, Jennings, & Garvey, PLLC; Samuel J. Strauss and Raina C. Borrelli of Strauss Borrelli, LLP; Lynn A. Toops of CohenMalad, LLP; and Troy Shelton and Craig Schauer of Schauer & Shelton LLP.

g. "Settlement Administrator" means CPT Group, Inc. ("CPT"), the entity retained to administer the terms of the Settlement Agreement.

h. "Settlement Class" means all RTI employees in the United States who experienced an employment loss, as defined by the WARN Act, within ninety (90) days of June 3, 2025, except that the "Settlement Class" does not include such employees who (i) executed agreements with Defendant containing a waiver of claims encompassing the WARN Act, or (ii) were on a long-term, unpaid leave of absence at the time of their employment loss.

i. "Settlement Class Counsel" means the counsel appointed by the Court to serve as class counsel for the Settlement Class under Rule 23(g).

j. "Settlement Class Member" means a member of the Settlement Class, except that the term shall not include any individuals who have opted out of the Settlement Class.

2. Gross Settlement Amount. In consideration for the full, complete, and final settlement of the Action, dismissal of the Action with prejudice, and the release of claims effected by this Settlement Agreement, Defendant shall pay the total sum of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Gross Settlement Amount"). For the avoidance of doubt, the Gross Settlement Amount is exclusive of the Employer Payroll Taxes (defined below). Except for the Gross Settlement Amount and the Employer Payroll Taxes, Defendant shall have no liability or responsibility for any additional payment to Settlement Class Members, Plaintiff, Plaintiff's Counsel, the Settlement Administrator, or any other person or entity entitled to payment or renumeration under this Settlement Agreement.

3. Administration of Gross Settlement Amount. Defendant shall remit the Gross Settlement Amount to a qualified settlement fund to be established by the Settlement Administrator in conformity with Internal Revenue Code § 468B (the "Qualified Settlement Fund"). The Settlement Administrator shall provide Defendant with a form W-9 for the Qualified Settlement Fund to enable payment of the Gross Settlement Amount to the Qualified Settlement Fund. The Settlement Administrator shall treat each payment to each Settlement Class Member from the Qualified Settlement Fund as back pay for tax purposes. The Settlement Administrator shall be responsible for calculating, withholding, and paying to the applicable taxing authorities all applicable federal, state, and local income and statutory taxes (including, without limitation, under the Federal Insurance Contribution Act, federal and state unemployment insurance law, and state disability and insurance law) associated with distributions to Settlement Class Members (the "Payroll Taxes"). The Settlement Administrator further shall calculate and provide to Defendant a

statement of the amount of the employer's share of Payroll Taxes for the Settlement Class Members' share of the distributable Gross Settlement Amount (the "Employer Payroll Taxes"). Defendant will transmit the Employer Payroll Taxes to the Settlement Administrator from funds separate from the Gross Settlement Amount for the Administrator to execute payment of said Employer Payroll Taxes. The Administrator shall be responsible for fulfilling all reporting requirements, including federal, state, and local payroll tax returns, issuing Forms W-2 and other required federal, state, and local tax forms, and related requirements. Under no circumstances will Defendant be liable for any errors or omissions by the Settlement Administrator in making any payments to any person or entity, or any reporting, required under this Settlement Agreement.

4. Timing of Payment to Qualified Settlement Fund. Within thirty (30) days of the Court's entry of an order preliminarily approving the Settlement Agreement (the "Preliminary Approval Order"), Defendant will remit to the Settlement Administrator the Gross Settlement Amount. The Settlement Administrator shall hold the Gross Settlement Amount in an escrow account established in the name of the Qualified Settlement Fund. All fees, costs, and taxes associated with the maintenance of the escrow account shall be the responsibility of the Settlement Administrator. Any income earned by the Gross Settlement Amount in escrow shall be added to the Gross Settlement Amount. If this Settlement Agreement is not finally approved or otherwise terminates, any amounts of the Gross Settlement Fund that have not been spent, and are not required for amounts that are due and payable for reasonable and identified Settlement Administrator's Expenses (defined below) already incurred, shall, within ten (10) days, revert to Defendant.

5. Plaintiff's Counsel's Attorneys' Fees and Costs. Plaintiff's Counsel may seek an award from the Court of reasonable attorneys' fees under Federal Rule of Civil Procedure 23(h), not to exceed one third of the Gross Settlement Amount, and an award of their taxable and

nontaxable costs under Federal Rules of Civil Procedure 54(d) and 23(h) (the "Attorneys' Fees and Costs"). Defendant will not oppose Plaintiff's Counsel's request for Attorneys' Fees and Costs.

6. Service Award. Because of the time, effort, and expense expended by Plaintiff Philip Schwab for his services in this case, Plaintiff's Counsel may seek a service award not to exceed Three Thousand Five Hundred Dollars ($3,500.00) to compensate Plaintiff for his services (the "Service Award"). Defendant will not oppose Plaintiff's request for the Service Award.

7. Costs of Settlement Administration. The actual and reasonable costs of administering the class notice and settlement by the Settlement Administrator (the "Settlement Administrator's Expenses") shall be payable from the Gross Settlement Fund (and not in addition thereto). The Settlement Administrator shall provide the Parties with the total amount of such costs at least five (5) days prior to the Court's hearing regarding final approval of the Settlement Agreement (the "Final Approval Hearing").

8. Allocation of the Gross Settlement Amount. Subject to the approval of the Court, the Gross Settlement Amount shall be distributed as follows:

a. First, the Settlement Administrator shall distribute the Service Award to Plaintiff, as finally approved by the Court, which payment shall be made within ten (10) days after the Effective Date.

b. Second, the Settlement Administrator shall distribute the Attorneys' Fees and Costs, as finally approved by the Court, to Plaintiff's Counsel, which payment shall be made within ten (10) days after the Effective Date.

c. Third, the Settlement Administrator shall distribute the Settlement Administrator's Expenses, as finally approved by the Court, to the Settlement Administrator, which payment shall be made within fifteen (15) days after the Effective Date.

d. Fourth, the Settlement Administrator shall calculate the "Net Settlement Amount", which shall be the Gross Settlement Amount less the amounts specified in sub-paragraphs a through c above. The Net Settlement Amount shall be allocated among the Settlement Class Members on a *pro rata* basis based upon each Settlement Class Member's average wages or salary during the ninety (90) day period preceding the Settlement Class Member's employment loss and the number of days' notice not provided to the Settlement Class Member, provided that there shall be a minimum payment to each Settlement Class Member of Fifty Dollars ($50.00). The Settlement Administrator shall mail each Settlement Class Member a check for his or her share of the Net Settlement Amount, less applicable withheld Payroll Taxes, which checks shall be sent within thirty (30) days after the Effective Date.

9. Remaining Funds After Distribution. The checks sent to the Settlement Class Members shall be valid for 90 days from the date of issuance. If more than 5 (five) percent of the Net Settlement Amount remains 91 days after the date the last check was issued under the preceding paragraph, those remaining funds shall be distributed *pro rata* according to the allocation formula set forth above to all Settlement Class Members who deposited or otherwise negotiated their checks within 90 days from the date they were issued. If any portion of the Net Settlement Amount remains 91 days after the date the last check was issued through this second distribution, or if the funds remaining after the first distribution total 5 percent or less of the Net Settlement Amount, such funds shall be disbursed by the Settlement Administrator to Legal Aid of North Carolina.

10. Release of Claims. Except for rights expressly arising out of, provided for, or reserved in this Settlement Agreement, upon the Effective Date, the Settlement Class Members, for and on behalf of themselves and their assigns, heirs, personal representatives, and estates (collectively, the "Releasing Parties"), fully and forever release and discharge Defendant, each of its subsidiaries and affiliated entities, and each of its officers, directors, shareholders, owners, agents, employees, employee benefit plans, accountants, attorneys, representatives, and other agents, and all of its respective predecessors, successors, and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees, and damages of whatever kind or nature, at law, in equity, and otherwise, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, or disclosed or undisclosed, that the Releasing Parties have, may have, or may have had against the Released Parties relating to any federal, state, or local law claims, whether statutory, common law, or otherwise: (a) arising under or related to the WARN Act; (b) asserted in the Complaint; (c) and/or deriving from the factual predicate set forth in the Complaint that were made or could have been made against Defendant in the Action ("Released Claims"). Upon the Effective Date, the Releasing Parties agree that any claims released by this paragraph shall be deemed waived without need for further court order.

11. Waiver of California Civil Code Section 1542. To effect a full and complete release as described above, with respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiff intends to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Thus, notwithstanding the provisions of Section 1542, or any like or similar statute or common law doctrine, and to implement a full and complete release and discharge of the Released Claims, Plaintiff expressly acknowledges, and each other Settlement Class Member shall be deemed to have acknowledged, that this Settlement Agreement is intended to include in its effect, without limitation, all Released Claims that Settlement Class Members and Plaintiff do not know or suspect to exist in their favor as of the Effective Date, and that this Settlement Agreement contemplates the extinguishment of any such claims. Settlement Class Members, including Plaintiff, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, upon the Effective Date, fully, finally, and forever settled and released any and all Released Claims. The Parties acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

12. Covenant Not to Sue. The Releasing Parties further agree that they will not institute any actions or causes of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal, or local government agency or with any administrative or advisory body, arising from or reasonably related to the Released Claims against the Released Parties.

13. No Admission of Liability. Defendant has agreed to the terms of this Settlement Agreement to end all controversy with Plaintiff and the Settlement Class Members and to avoid the burden and expense of litigation, without in any way acknowledging fault or liability. Defendant denies any liability or wrongdoing of any kind associated with the claim alleged in the Action. Defendant has denied and continues to deny each and every material factual allegation and claim asserted against it in the Action. Nothing herein shall constitute an admission by Defendant of wrongdoing or liability, or of the truth of any allegations in the Action. The settlement of this Action, the negotiation and execution of this Settlement Agreement, and all acts performed or documents executed pursuant to or in furtherance of the settlement are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant, or as a concession by Defendant as to the truth of any of the allegations in this Action, or the veracity of any claim for relief or defense, or as an admission regarding any other matter in this Action. This Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it (i) shall not be offered or received against Defendant or any other Released Party as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by Defendant or any other Released Party concerning the truth of any fact alleged by the Plaintiff or the validity of any claim that was or could have been asserted against Defendant or any Released Party in the Action or in any litigation, or of any liability, fault, misconduct, or wrongdoing of any kind of Defendant or any Released Party; (ii) shall not be offered or received against Defendant or any Released Party as evidence of a presumption, concession, or admission of any liability, fault, misconduct, or wrongdoing by Defendant or the Released Parties of any kind, or against the Plaintiff or any Settlement Class Member as evidence of any infirmity in the claims of the Plaintiff or the other Settlement Class Members; and (iii) shall not be construed against Defendant or any Released Party, or against the Plaintiff or any other

Settlement Class Member, as an admission, concession, or presumption that the consideration to be given by this Settlement Agreement represents the amount which could be or would have been recovered after trial. Notwithstanding the foregoing, this Settlement Agreement may be used as evidence for the purpose of enforcing its terms.

14. Contents of Notice of Settlement. The Parties shall cooperate reasonably and in good faith to agree on the form and content of notice to be sent to the Settlement Class (the "Class Notice") that clearly and concisely states in plain, easily understood language: (a) the nature of the Action; (b) the definition of the Settlement Class; (c) the Settlement Class's WARN Act claim; (d) that any Settlement Class Member may enter an appearance through an attorney if desired; (e) that the Court will exclude from the Settlement Class any individual who requests exclusion; (f) the time and manner for requesting exclusion; (g) the binding effect of a class judgment on Settlement Class Members; (h) the essential terms of the Settlement Agreement; (i) information regarding Attorneys' Fees and Costs; (j) the essential terms of the allocation of the Net Settlement Amount and the manner of making distributions from the Net Settlement Amount; and (k) Plaintiff's Counsel's contact information.

15. CAFA Notice. Plaintiff's Counsel will cause the Settlement Administrator to provide notice of this Settlement Agreement to all relevant state and federal governmental officials as required by the Class Action Fairness Act ("CAFA") no later than (10) days following the filing of the Settlement Agreement with the Court and to otherwise comply with the terms of CAFA. The cost of providing such notice shall be considered Settlement Administrator's Expenses.

16. Manner of Notice of Settlement. The Settlement Administrator shall provide the Class Notice to the Settlement Class using three methods: (a) by creating and maintaining a static website at a URL agreed to by the Parties, on which a detailed notice shall be posted; (b) by sending a summary postcard notice to the Settlement Class by mail; and (c) by sending notice to the

Settlement Class by email, if email addresses are available. Email notices shall be e-mailed, and the summary postcard notices mailed, no later than thirty (30) days after the Preliminary Approval Order is entered by the Court. The Settlement Administrator's mailing address shall be the return address for the summary postcard notice so that any returned summary postcard notices will be returned to the Settlement Administrator. If any mailed summary postcard notice is returned as undeliverable with a forwarding address, the Settlement Administrator shall promptly cause the summary postcard notice to be forwarded by mail to the listed forwarding address. If any mailed summary postcard notice is returned as undeliverable without a forwarding address, the Settlement Administrator shall attempt to locate the correct address through a reasonable search and promptly forward the summary postcard notice to the address obtained from the search.

17. Approval of Class Notice. Plaintiff shall ask the Court to approve the contents of the Class Notice and the manner and method of its distribution in the Preliminary Approval Order. The Settlement Administrator shall effectuate the distribution of the Class Notice as approved by the Court. The costs of effectuating the Class Notice shall be included in the Settlement Administrator's Expenses.

18. Defendant's Cooperation in Effectuation of Class Notice. Defendant shall cooperate reasonably and in good faith with the Settlement Administrator to provide the Settlement Administrator with the following information about members of the Settlement Class for effectuating the Class Notice and this Settlement Agreement: full names, last-known addresses, email addresses (if available), and Social Security numbers. Neither Plaintiff nor Plaintiff's Counsel shall have access to such information. The Parties shall require the Settlement Administrator to agree in writing to keep such information in confidence, to use it only for the purposes of effectuating the terms of the Settlement Agreement, and to retain it no longer than is reasonably necessary to effectuate the terms of the Settlement Agreement.

19. Exclusion from Settlement Class. Any person within the definition of the Settlement Class may seek to be excluded from the Settlement Class by submitting a request for exclusion to the Settlement Administrator which complies with the requirements listed in the Class Notice and is postmarked not later than seventy-five (75) days after the date on which the Preliminary Approval Order is entered by the Court. The rights and obligations of any person who timely and properly elects to be excluded from the Settlement Class will not be affected by this Settlement Agreement. Any person within the definition of the Settlement Class who elects to be excluded shall have no right to object to this settlement and shall not share in the Net Settlement Amount. Defendant reserves all rights and defenses against any member of the Settlement Class who effectively opts out of this Settlement Agreement.

20. Objections. A Settlement Class Member may object to this Settlement Agreement by sending timely written notice of such objection to Class Counsel and Defendant's Counsel at the addresses set forth below and by filing such objection with the Court. Any such objections shall state (i) the objector's full name, mailing address, and telephone number, (ii) if applicable, the full name, mailing address, and telephone number of the objector's attorney, and (iii) the basis for objecting to the Settlement Agreement and any supporting papers, materials, or briefs. Any such objections must be postmarked or filed with the Court within seventy-five (75) days of the date on which the Preliminary Approval Order is entered by the Court, or by such later deadline as established by the Preliminary Approval Order.

21. Cooperation in Obtaining Court Approval. The Parties shall cooperate in good faith to take all reasonably necessary steps to obtain the Court's approval of the Settlement Agreement.

22. Motion for Preliminary Approval Order. Plaintiff shall move the Court for, and Defendant shall not oppose entry of, a Preliminary Approval Order which (a) preliminarily approves the settlement embodied in this Settlement Agreement under Federal Rule of Civil

Procedure 23(e)(1); (b) conditionally certifies the Settlement Class for settlement purposes only under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (c) designates Plaintiff's Counsel as interim Settlement Class Counsel under Federal Rule of Civil Procedure 23(g)(3) and appoints Plaintiff as the Settlement Class representative; (d) approves the form and manner of the Class Notice and directs that notice be given to the Settlement Class; (e) approves the allocation of the Net Settlement Amount; (f) approves the Settlement Administrator; (g) establishes the time and manner for requesting exclusion from the Settlement Class; (h) schedules the hearing required by Federal Rule of Civil Procedure 23(e)(2) for hearing Plaintiff's motion for a Final Approval Order (no earlier than ninety (90) days after the date when the federal and state officials receive their CAFA notices); and (i) schedules a hearing on Plaintiff's motion for Attorneys' Fees and Costs and for the Service Award. Defendant's non-opposition to Plaintiff's request for entry of the Preliminary Approval Order shall not constitute an admission by Defendant as to any matter.

23. Motion for Final Approval Order. In accordance with the terms of the Preliminary Approval Order, Plaintiff shall move the Court for, and Defendant shall not oppose entry of, a Final Approval Order which (a) approves the settlement embodied in the Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2); (b) certifies the Settlement Class for purposes of settlement under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (c) designates Plaintiff's Counsel as Settlement Class Counsel under Federal Rule of Civil Procedure 23(g)(1); and (d) provides for entry of final judgment as a separate document under Federal Rule of Civil Procedure 58(a) dismissing the Action with prejudice, except retaining ancillary jurisdiction to decide Plaintiff's motion for Attorneys' Fees and Costs, and for the Service Award, and to enforce the terms of the Settlement Agreement. Defendant's non-opposition to Plaintiff's request for entry of the Final Approval Order shall not constitute an admission by Defendant as to any matter.

24. No Further Actions. Except as necessary to secure approval of this Settlement Agreement or as otherwise provided herein, the Parties shall take no further steps to prosecute the Action in this Court or any other court.

25. Termination. The Settlement Agreement shall terminate if the settlement it embodies is not approved by the Court or if the Court declines to certify the Settlement Class for settlement purposes. Furthermore, Defendant may elect to terminate the Settlement Agreement if more than five (5) percent of the Settlement Class request exclusion from the Settlement Class. The Settlement Administrator shall notify Defendant of the Settlement Administrator's receipt of a request for exclusion within five (5) days of receipt. Defendant must exercise its termination right within ten (10) days of the submission of the last exclusion request necessary to trigger the termination right. If the Settlement Agreement is terminated, it shall have no force or effect, and the Parties shall be restored to the status quo ante existing before they agreed to settle the Action. For the avoidance of doubt, any ruling by the Court or any reviewing court as to Attorneys' Fees and Costs shall not in any way terminate or modify the Settlement Agreement.

26. Inquiries from Settlement Class. It shall be the responsibility of the Settlement Administrator to respond to all non-legal inquiries from or on behalf of the Settlement Class with respect to this Settlement Agreement. The Settlement Administrator shall confer with Plaintiff's Counsel and Defendant's Counsel as necessary to provide an accurate response to any non-legal inquiry from an individual in the Settlement Class.

27. Interpretation. When interpreting this Settlement Agreement, the following rules shall apply:

a. "Including" shall not be interpreted as a limitation.

b. "Or" shall be interpreted inclusively.

c. The number of the noun or verb, and the number and gender of the pronoun, shall be interpreted as including the others when necessary to reflect the Parties' intent.

d. No Party or Party's counsel shall be deemed the drafter of the Settlement Agreement for purposes of interpreting it.

e. All references to days shall be interpreted to mean calendar days, unless otherwise noted. When a deadline or date falls on a weekend or a legal Court holiday, the deadline or date shall be extended to the next business day which is not a weekend or legal Court holiday.

f. Headings contained in this Settlement Agreement are for convenience of reference only and are not intended to alter or vary the construction and meaning of this Settlement Agreement.

g. If there is a conflict between this Settlement Agreement and a Court order, the Court's order shall take precedence.

28. Governing Law. This Settlement Agreement shall be governed by the laws of the State of North Carolina, without regard to its conflicts of law principles.

29. Cooperation in Effectuating Settlement. The Parties shall cooperate with each other in good faith to consummate the terms of this Settlement Agreement and all related transactions, and shall take all reasonably necessary steps to give effect to the terms of this Settlement Agreement.

30. Complete Agreement. This Settlement Agreement contains the full, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and supersedes any prior writings or agreements (written or oral) between or among the Parties, which prior agreements may no longer be relied upon for any purpose.

31. Third-Party Beneficiaries. This Settlement Agreement shall bind and inure to the benefit or detriment of the Parties and the Settlement Class Members, and their respective agents, employees, representatives, trustees, members, managers, officers, directors, shareholders, divisions, parent corporations, subsidiaries, heirs, executors, assigns, and successors in interest. All of Defendant's affiliates shall be intended third-party beneficiaries of the Released Claims set forth in this Settlement Agreement.

32. Represented by Counsel. The Parties acknowledge that they have been represented in negotiations for and in the preparation of this Settlement Agreement by independent counsel of their own choosing, that they have read this Settlement Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Settlement Agreement and of its legal effect. This Settlement Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

33. No Liens. Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity or otherwise, of or against any of the claims or causes of action released herein, and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

34. No Public Statement. Plaintiff and Plaintiff's Counsel will neither seek media attention for the settlement embodied in the Settlement Agreement nor publicly disseminate information about the Action in any way—including transmitting information through publicized interviews, websites, digital applications or services, or hard copy publications—except as otherwise provided by the terms of the Settlement Agreement or by order of the Court. However, nothing shall prevent Plaintiff's Counsel from responding to inquiries from the Settlement Class about this matter or including this matter on a list of settled cases on their websites or resumes.

35. Confidential Information. Plaintiff and Plaintiff's Counsel shall not disclose and shall keep confidential all information in their possession concerning Defendant, the Released Parties, the Action, and the Settlement Agreement, except as otherwise provided by the terms of the Settlement Agreement or by order of the Court.

36. Non-Disparagement. Plaintiff shall not disparage or make defamatory or knowingly false statements about Defendant or the Released Parties to any person or entity under any circumstances.

37. Filing Under Seal. Defendant may move to have some or all of the Settlement Agreement filed under seal or redacted. The Court's ruling on such motion shall not impair or alter the Settlement Agreement in any way.

38. No Modification. The Settlement Agreement may not be modified in any way except in writing signed by the Parties or Parties' Counsel, subject to Court approval, if required. Likewise, the Parties may only mutually waive a provision of this Settlement Agreement through a written waiver signed by the Parties or Parties' Counsel, subject to Court approval, if required. A waiver or modification of a provision of this Settlement Agreement will not constitute a waiver or modification of any other provision.

39. Execution in Counterparts. This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies or electronic scans of executed copies of this Settlement Agreement may be treated as originals.

40. Recitals. Each of the Recitals stated above is hereby incorporated into this Settlement Agreement as if stated fully herein.

41. Notices. Except as otherwise provided herein, all notices, demands, or other communications given or made under the Settlement Agreement shall be in writing and delivered by post, courier, facsimile, or electronically to the following:

*If to Plaintiff or Plaintiff's Counsel:*

J. Gerard Stranch, IV
Michael C. Tackeff
**STRANCH, JENNINGS, & GARVEY, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

Troy D. Shelton
Craig Schauer
**SCHAUER & SHELTON LLP**
13200 Strickland Road, Suite 114-329
Raleigh, NC 27613
tshelton@schauershelton.com
cschauer@schauershelton.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
ltoops@cohenmalad.com

Samuel J. Strauss
Raina C. Borrelli
**STRAUSS BORRELLI, LLP**
613 Williamson St., Suite 201
Madison, WI 53703
sam@straussborrelli.com
raina@straussborrelli.com

*If to Defendant or Defendant's Counsel:*

Mark A. Hiller
Julian H. Wright, Jr.
Brendan P. Biffany
**ROBINSON, BRADSHAW & HINSON, P.A.**
1450 Raleigh Road, Suite 100
Chapel Hill, North Carolina 27517

mhiller@rbh.com
jwright@rbh.com
bbiffany@rbh.com

[*Remainder of page intentionally left blank.*]

IN WITNESS WHEREOF, the undersigned Party has executed this Settlement Agreement on the date indicated below.

PHILIP SCHWAB, Plaintiff

By: ________________________________
Name: Philip Schwab

Date: 9-29-2026

IN WITNESS WHEREOF, the undersigned Party has executed this Settlement Agreement on the date indicated below.

RESEARCH TRIANGLE INSTITUTE, Defendant

By: ______________________
Name: Tim J. Gabel
Title: President & CEO

Date: 10/5/26